ANNIE R. WHITTEMORE *vs.* TOWN CLERK OF FALMOUTH.

SAME *vs.* BUILDING INSPECTOR OF FALMOUTH.

</div>

Suffolk.  ·November 13, 1936, June 28, 1937. — December 27, 1937.

<div align="center">Present: RUGG, C.J., FIELD, DONAHUE, & QUA, JJ.</div>

<div align="center">*Zoning. Words,* "Recommendation."</div>

By G. L. (Ter. Ed.) c. 40, § 27, as appearing in St. 1933, c. 269, § 1, a town which had a planning board could not make an amendment of the districts established in its zoning by-law until after there had been a final report and recommendation concerning the matter by that board.

A statement by the planning board of a town that after a tie vote of its members it was "unable at this time to make any recommendation" was not a "report with recommendations" under G. L. (Ter. Ed.) c. 40, § 27, as appearing in St. 1933, c. 269, § 1.

Two PETITIONS for writs of mandamus, filed in the Supreme Judicial Court for the county of Suffolk on March 8, 1935, and March 30, 1936.

The cases were heard by *Pierce*, J.

*J. P. Sylvia, Jr.,* (*R. Clayton* with him,) for the respondents.

*S. R. Wrightington*, for the petitioner.

RUGG, C.J.   These are two petitions for writs of mandamus.   In the petition against the town clerk are prayers that the respondent be directed to expunge from her official record of a special town meeting recitals to the effect that a vote had been adopted amending the zoning by-law of Falmouth and to record in place thereof a copy of the decision to be made by the court on that petition.   This petition was referred to an auditor, who submitted a comprehensive report.   Later a petition for a writ of mandamus was brought by the same petitioner against the building inspector of Falmouth to compel him to enforce the zoning by-law, as it was before the alleged amendment, against one Samuel T. Cahoon for maintaining an ice manufacturing plant in a residential district.   This second petition was referred to the same auditor to be heard upon the same evidence then before him in the proceeding against the town clerk and upon any further evidence.   After hearing both cases the auditor filed in the case against the building inspector a report substantially identical with that already filed in the case against the town clerk.   He also filed a supplemental report in the case against the town clerk.   The cases were then heard by a single justice on the auditor's reports and the exhibits therein referred to.   No other evidence was introduced.

Requests for rulings were presented by both parties and passed upon by the single justice.   No findings of fact made by him are set forth in the record.   In each case it was ordered that a writ of mandamus issue.*   The cases come before us on exceptions by each respondent.

* In the case against the building inspector it was ordered that "the writ of mandamus issue as prayed for."   In the case against the town clerk it was ordered that the writ of mandamus issue commanding the respondent "to enter, or cause to be entered, on the margin of the record of the special town meeting . . . a reference to the action of this court" in the case against the building inspector. — REPORTER.

The alleged amendment to the zoning by-law purported to change a comparatively small lot near the center of a large single residence district, on which was located a plant for the manufacture of artificial ice, so that it would be in a light industrial district and not in the residence district. The petitioner contends that the amendment was void (1) because qualified voters were unable to get into the town meeting at which it was adopted, (2) because the planning board did not make a preliminary report with recommendations, which by statute is made a condition precedent to any amendment, (3) because the amendment violated the statute requiring substantial uniformity for like territory, (4) because the purpose of the amendment was the private benefit of the owner of the land so changed. It is not necessary to pass upon all these contentions.

Facts material to the grounds of this decision are these. The petitioner is a citizen of Falmouth and the owner of real estate on the shore of Buzzards Bay in that town. That real estate is laid out in house lots for summer residences, and roads have been constructed at the expense of the petitioner. The petitioner has erected on it an attractive residence, which she occupies throughout the year. Various lots have been sold and dwellings for summer residences have been built upon them. In May, 1926, the town of Falmouth adopted a zoning by-law in accordance with the statutes. (See now G. L. [Ter. Ed.] c. 40, §§ 25–33, as amended.) The petitioner's land was wholly in a single residence district. In 1928 the petitioner sold a parcel of land to Samuel T. Cahoon, a citizen of Falmouth, for the ice business. The greater part of this land was too narrow for residences. Cahoon tore down an old ice house which was on the land and erected a new one, after obtaining a variance to permit a set-back. He harvested natural ice from an adjoining pond in 1929, but was unable to do so for several years thereafter because of mild weather, and has harvested none since that year. Due to increased demands for ice Cahoon, in April, 1933, installed an artificial ice plant in his building. Before doing this he inquired of a former building inspector and was told that he could make

such installation if no exterior changes were made. This ice plant was operated by engines. There were complaints about the noise of operation of the ice plant. Changes were made which practically eliminated the noise and as thus changed the operation of the ice plant would attract very little attention by noise or smoke. Soon after, a petition was circulated for a special town meeting to change the real estate where the ice is manufactured from the single residence district to the light industrial district. No action was taken at a town meeting until 1935. The petitioner made objection to the selectmen against the further operation of the ice plant, and supporting petitions signed by numerous property owners were presented. Cahoon caused to be circulated petitions for a special town meeting to pass upon an article to amend the zoning by-law by changing the ice plant property from a single residence to a light industrial district.

The town meeting was held on a very cold night. The vote in favor of the change was six hundred ninety, to eleven against it. Cahoon and those employed by him and doing business with him were very active in getting out voters for this meeting, but no improper methods were used. While the hall in which the meeting was held was crowded and people had to force their way in at some inconvenience, one could find a seat if he persisted. Before the town meeting was held the planning board, which consisted of twelve members, held a duly advertised public meeting to consider the proposed amendment to the zoning by-law. The petitioner and Cahoon were present with counsel and were heard, as were others. Ten members of the planning board were present at this meeting and eight at the final meeting held three days later. Two members were out of town. After discussion, a secret ballot was taken on the question whether the adoption of the article be recommended. Four voted in favor, and four against. A report was typewritten but not signed. It was read at the special town meeting. It recited certain facts and arguments, and concluded with the statement that after careful consideration a ballot was taken resulting in a tie vote and that the

board was "unable at this time to make any recommendation." The auditor found as a fact that the planning board made no recommendation. The record of the town meeting does not appear to contain any reference to this. The proceedings of the town meeting were regular and in order, and the action of the town clerk in recording the vote was proper.

It is provided by G. L. (Ter. Ed.) c. 40, § 27, as appearing in St. 1933, c. 269, § 1, with respect to zoning, that such "ordinances or by-laws may be adopted and from time to time be changed by amendment, addition or repeal, but only in the manner hereinafter provided. No ordinance or by-law originally establishing the boundaries of the districts or the regulations and restrictions to be enforced therein, and no ordinance or by-law changing the same as aforesaid, shall be adopted until after the planning board, if any, or, in a town having no such board, the board of selectmen, has held a public hearing thereon after due notice given and has submitted a final report with recommendations to the city council or town meeting." There was a planning board in Falmouth. See G. L. (Ter. Ed.) c. 41, §§ 70, 71, 72, as amended by St. 1936, c. 211. Among other duties such board was required to "make careful studies of the resources, possibilities and needs of the town, . . . and make plans for the development of the municipality, with special reference to proper housing of its inhabitants." These statutory provisions are peremptory to the effect that no by-law changing the boundaries of zoning districts shall be adopted until after there has been a public hearing on the subject and the submission of a "final report with recommendations" by the planning board. By plain words a condition precedent is thus established to the making of such changes. The town meeting has no jurisdiction to take up the consideration of the merits of such change unless and until there is before it a report by the planning board "with recommendations." The report of the planning board in the case at bar contained no recommendations. That is the explicit finding of the auditor. That finding has ample support in the facts reported by the auditor. By no stretch of construction can a statement of inability to make a recom-

mendation be interpreted to be a report "with recommendations." It is not a negative report on the subject. It is at most simply neutral. It is wanting in every element of positiveness required by the statute as to recommendations. See *State* v. *Schwartz,* 336 Mo. 932, 941. The word "recommendation" in its context in this statute connotes advice based upon information and enlightenment elicited at a public hearing and upon study and reflection, to ascertain the wisest course for the town to pursue. It means that a permanent board of public officers whose duties relate to the study of means of improvement of general living conditions shall make a preliminary investigation and report with recommendations before the town may take action. The conclusion is that the amendment to the zoning by-law was invalid because the planning board did not make a report "with recommendations" as required by the governing statute.

It is not necessary to discuss or consider the other grounds upon which the petitioner argues that the amendment to the zoning by-law was void.

It has not been contended that, if the alleged amendment was not legally adopted, mandamus does not afford the appropriate remedy. *Crocker* v. *Justices of the Superior Court,* 208 Mass. 162, 164. *Andrews* v. *Registrars of Voters of Easton,* 246 Mass. 572, 576. *Godfrey* v. *Building Commissioner of Boston,* 263 Mass. 589, 593. *D. N. Kelley & Son, Inc.* v. *Selectmen of Fairhaven,* 294 Mass. 570, 574. *Cape Cod Steamship Co.* v. *Selectmen of Provincetown,* 295 Mass. 65. The writ may also run against the respondents if any of the petitioner's contentions can be upheld.

In each case the entry may be

*Exceptions overruled.*