## In re East Whiteland Township Zoning Board

108

*James E. O'Neill, Jr.*, for complainants.
*Ralph W. Kent*, for East Whiteland Township.
*Francis X. Hope, John B. H. Donaldson* and *Arthur Littleton*, for intervenors.

KURTZ, J., June 27, 1962.—This is the second skirmish between the Valley Forge Stone Company and the residents of "Down East" in East Whiteland Township, this county, over the application by Valley Forge to obtain a permit to conduct quarrying operations on a tract known as the Patterson tract in said township, of which it is the equitable owner under an agreement of sale with the Patterson estate. In the first, we held that procedural requirements had not been observed in the adoption by the supervisors of a resolution of January 2, 1962, which purported to rescind the resolution now under attack. National Bank of Chester County and Trust Company v. East Whiteland Township, 27 D. & C. 2d 351, decided April 16, 1962. In this one, complaint is made as to the legality of a resolution adopted by said supervisors on December 26, 1961, the effect of which was to grant the permit for which Valley Forge had originally made application. See The Second Class Township Code; The Act of May 1, 1933, P. L. 103, sec. 702, as last amended by the Act of June 19, 1961, P. L. 486, sec. 1. In its consideration, our inquiry is limited to the manner in which the resolution was passed and to procedural irregularity: Griffith v. McCandless Township, 366 Pa. 309 (1951); McArthur v. Mt. Lebanon Township, 402 Pa. 78 (1960); Wynnewood Civic Association v. Lower Merion Township, 180 Pa. Superior Ct. 453 (1956); Alenovitz v. East Whiteland Township, 6 Chester 184 (1954).

All complainants in this action are residents of East Whiteland Township who own and occupy homes in the immediate vicinity of the intersection of Morehall and Swedesford Rds., the tract here in question being located in the northwest corner of that intersection. It has been stipulated that they have standing to raise the complaint here asserted.

The controversy arises under the provisions of section 301 of the Township Zoning Ordinance of 1953. It provides that in an "A-Rural Residence District" (the land here in question being located within such a district), land may be used for certain specified purposes, among which is the following:

"6. Mining, quarrying and/or processing of natural resources obtained on the site when authorized by the Board of Township Supervisors upon recommendation of the Board of Adjustment after public hearing before such Board of Adjustment provided (1) that adequate guarantee be given to assure that all mining areas be maintained in a safe condition; (2) that no area used for mining, quarrying or processing of natural resources shall be located less than one hundred (100) feet from any side or rear property line unless the written consent of the owner or owners of the abutting property is obtained and approval is obtained from the Board of Supervisors after public hearing; and (3) that suitable arrangements be made to assure that the operation or process is not noxious or offensive as defined in section 705."

Valley Forge made application to the board of adjustment and to the supervisors for a permit to quarry under the provisions of the above-quoted section. Thereafter, the board of adjustment conducted a series of hearings and took considerable testimony, after which on December 14, 1961, it filed a "Decision," by the terms of which it did "not recommend that Valley Forge Stone Company . . . be permitted to quarry stone on or from the subject tract or tracts of land." The decision also set forth the grounds upon which the board of adjustment based its refusal to make a recommendation.

Following the filing of said decision, the supervisors, at a special meeting held December 26, 1961, adopted

the resolution now under attack. The effect of this resolution was to reject the recommendation of the board of adjustment and to permit Valley Forge to conduct its quarrying operation upon the tract in question subject to its observance of the conditions and restrictions set forth in the resolution itself.

Complaint is first made that the action of December 26, 1961, was an attempt to amend the zoning ordinance and that the notice given was not sufficient for this purpose under the law.

We do not believe that by their action December 26, 1961, the supervisors were attempting to amend the zoning ordinance. We come to this conclusion in spite of the position now taken by counsel for the board as presently constituted, that its predecessor was attempting so to do. As we pointed out in our earlier decision, cited above, the function here being performed by the supervisors was an administrative or quasi-judicial one. It did not constitute the adoption of legislation. That in the first case the supervisors withdrew a privilege already conferred, while in this one permission to quarry was granted, is not a distinction which ought to prompt us to alter that conclusion. In this instance, the supervisors acted after the board of adjustment, the eyes and ears of the board of supervisors under the express language of the ordinance, had performed its investigatory function of hearing and reviewing the evidence and making a recommendation thereon. This, as our earlier decision clearly indicates, constituted the fulfillment of a quasi-judicial function: Essick v. City of Los Angeles, 34 Cal. 2d 614, 213 P. 2d 492 (1950) ; Rathkopf, The Law of Zoning and Planning (Third ed.), vol. 1, page 54-31, footnote 2. The granting of permits by boards of adjustments in zoning cases has always been considered to be administrative in character: Liggett's Petition, 291 Pa. 109, 117 (1927) ; Valicenti's Appeal, 298 Pa.

276, 281 (1929) ; Fleming v. Prospect Park Board of Adjustment, 318 Pa. 582, 584 (1935). In this case, the supervisors, under the terms of the ordinance, have reserved that permit-granting authority unto themselves. This reservation, in our opinion, does not alter the character of the function itself.

Having reached the conclusion expressed above, it now becomes clear that the procedures for amendment set up by The Second Class Township Code and by the zoning ordinance itself were not required to be observed in the adoption of the resolution of December 26, 1961. Indeed, the amendatory procedures contained in the ordinance are directory at best: Pumo v. Norristown Borough, 404 Pa. 475 (1961). When a township causes notice to be published as required by the enabling act, it has done all that it is required to do to validate the action taken: Putney v. Abington Township, 176 Pa. Superior Ct. 463 (1954).

We note, however, that although the complaint as filed does not specifically so charge, it has been argued by the complainants that the action here attacked was not legally undertaken because the notice of the special meeting of December 26, 1961, did not meet statutory requirements. The Act of June 21, 1957, P. L. 392, sec. 3, as amended, is cited as the one whose requirements have not been observed. Those portions of it which are here material provide as follows: "Every board shall hold all public meetings, at specified times and places, of which public notice shall be given . . . Public notice of each special meeting and of each rescheduled regular or special meeting shall be given of the date, time and place of each meeting. Public notice shall be given (1) by posting a copy of the notice prominently at the principal office of the body holding the meeting or at the public building in which the meeting is to be held . . . Public notice shall be given . . . at least twenty-four hours prior to the time of the

meeting in the case of special or rescheduled meetings
. . . "

Notice of the meeting here in question was posted on the front and back doors of the township building on December 22, 1961, as follows:

"TO ALL RESIDENTS OF EAST WHITELAND TOWNSHIP AND ALL PARTIES OF INTEREST:

"Notice is hereby given that a special meeting will be held by the Board of Supervisors of East Whiteland Township on Tuesday, the 26th to consider the application of J. Allen Patterson and Rae Crowther, Jean Crowther, co-partners for authorization to quarry on lands owned by Mr. Patterson pursuant to recommendation by the Board of Adjustment of East Whiteland Township.

"The Supervisors will decide as to whether or not a permit to quarry on premises containing approximately fifty (50) acres, bounded by Morehall, Swedesford Road, Valley Forge Stone Co. and Rubino property shall be issued.

"This will be a public hearing to which all interested parties are invited to attend.

Board of Supervisors"

It is argued that such notice is deficient in two particulars, in that it did not contain either the time or the place of the meeting.

Proponents contend, on the other hand, that these alleged deficiencies in the notice make no difference, because complainants' counsel had actual notice of the time and place of the meeting and at least two of them attended the meeting at which there were some 150 interested persons present, some of whom participated in the discussion.

From the record, it is found that a prior meeting was held at the township office on Thursday evening, December 21, 1961. The meeting was attended by the three supervisors then in office, a member of the bar

of this court representing "Down East Property Owners," the township solicitor and a member of the bar of Delaware County representing Valley Forge. At that meeting, all present were advised by the then chairman of the board of supervisors that a meeting would be held on December 26, for the purpose of considering the Valley Forge application.

The meeting of December 26, 1961, was held in the same place, the township office. The three supervisors were again present, as were the lawyers above mentioned and some 150 or 200 persons, including William Loucks and Janet Loucks, two of the complainants in this action. The two last named received actual notice of the meeting by telephone at about 6:45 p.m. of the evening it was to be held. At the meeting neither they nor Down East's attorney voiced any protest as to the insufficiency or inadequacy of the notice given. That attorney participated in the discussion prior to the time the supervisors voted to adopt the resolution here in question.

William Loucks is now the president of the Down East Property Owners Association. There is no evidence in this record which would indicate when he assumed that office.

On December 28, 1961, the complaint in this action was filed and the bond then proffered was approved by the court. The same member of the Chester County bar who was present on December 21, 1961, and who attended the meeting of December 26, 1961, signed the complaint as attorney for the complainants. It recites that the complainants are residents and taxpayers of the township who are the owners and occupiers of homes in the immediate vicinity of the intersection of Morehall and Swedesford Rds. "Down East" is located in that vicinity. From the above we infer and find as a fact that the attorney, present at the meeting on December 21, 1961, represented these complainants at

that time when he was notified of the special meeting of December 26, 1961, and that he represented them at that special meeting as well. Mr. Loucks admitted as much in his testimony before this court when he said that that lawyer was representing the association and the individuals for the purpose of making a statement on their behalf before the supervisors took action upon Valley Forge's application.

In this situation, Valley Forge contends that the alleged deficiencies in the notice complained of do not render the resolution illegal and of no effect. In support of that position it points to Bell's Appeal, 115 Pa. 88 (1887), and zoning cases from other jurisdictions which follow the same principle of law, to the effect that one who appears in a proceeding and participates in it waives notice of it. One entitled to notice cannot be heard to say that he had no notice after he has appeared and defended a suit which, of necessity, must have supplied that notice to him: McCune v. Scott, 18 Pa. Superior Ct. 263 (1901).

Although we find no zoning cases in Pennsylvania in which that principle has been applied, there are such in other jurisdictions. For example, see De Luca v. Board of Supervisors of Los Angeles County, 134 Cal. App. 2d 606, 286 P. 2d 395 (1955), and McLain v. Planning Commission of the City of Chico, 156 Cal. App. 2d 161, 319 P. 2d 24 (1957). Upon appearance, failure to object has been held to be an effective waiver to alleged lack of notice: Hirsch v. Zoning Board of Review of City of Pawtucket, 56 R. I. 463, 187 Atl. 844 (1936); State ex rel. Luechtefeld v. Arnold, 149 S. W. 2d 384 (Mo. App. 1941).

Only two of ten complainants have appeared as witnesses in this proceeding. The two who have appeared have not explained how the alleged deficiencies in the posted notice resulted in their being harmed to any degree. Their counsel was in attendance at the

meeting and spoke for them. He had notice of it for at least four days prior to its being held. Notice to him was notice to his clients. "A person has notice of a fact if his agent has knowledge of the fact, reason to know it or should know it, or has been given a notification of it . . .": Restatement, Agency 2d §9 (3). This statement has been held to apply to notice of a hearing before the Public Utility Commission given to the burgess of a municipality concerned in that hearing: Bridgewater Borough v. Pennsylvania Public Utility Commission, 181 Pa. Superior Ct. 84, 97 (1956). We hold, therefore, that the failure of the notice to specify a time and place of meeting did not affect the legality of the resolution adopted at the meeting of December 26, 1961.

Complainants next assert that the notice was misleading in that it makes reference to the application of these intervenors for authorization to quarry upon the land specified, "pursuant to recommendation by the Board of Adjustment of East Whiteland Township". No one has said, however, that he was, in fact, misled thereby.

Counsel has argued that from the posted notice it could have been fairly inferred that the board of adjustment had recommended the granting of the permit sought by Valley Forge, when the fact was that that board had expressly refused to so recommend.

We have already pointed out that only two of ten complainants appeared to testify. The two who did testify have not said that they were misled. The statute requiring the notice does not stipulate that the purpose of the meeting be stated therein or that it contain any information in addition to the date, time and place of the meeting. For that reason, we believe that any statement in the notice such as the one now in question can be only surplusage. Being surplusage it cannot

be construed to vitiate the notice itself in the absence of some proof that it has been relied upon to the detriment of the one complaining: Commercial Standard Ins. Co. v. Garrett, 70 F. 2d 969 (10 Cir. 1934). We can find no merit in complainants' contention on that point.

At argument complainants further asserted that administrative proceedings must conform to the basic requirements of due process; that such requirements include notice and an opportunity to be heard; and that the procedure here undertaken must be consistent with the essentials of a fair trial. With all of the above we agree. We have so held in our earlier opinion growing out of this same controversy.

We believe that we have already demonstrated that no one has said or now says he was prejudiced or harmed by the alleged deficiencies in the notice. No one has complained that he had anything to say at the meeting which he was prohibited or precluded from saying. The notice itself was posted in a proper place for that period of time required by the statute. Actual knowledge of the time and place of meeting was given personally to the complainants' legal representative. Any complainant who did not get notice did not look for it in the proper places. For these reasons, we cannot now hold that the essentials of due process were not observed in the adoption of this resolution. The required elements of a fair trial, i.e., notice and an opportunity to be heard, were afforded.

The third assertion made against the resolution as set forth in the complaint is that it amounts to conditional legislation beyond the power of the board of supervisors under the provisions of The Second Class Township Code. We have already stated in this opinion that the supervisors were not acting in a legislative capacity in the adoption of this resolution. The granting of this permit was administrative or quasi-

judicial in character. In any event, complainants' counsel apparently abandoned that position at the hearing when he stated that his case rested upon two grounds only, neither of which involves the point now under discussion. This point was not again asserted nor argued at the argument on June 8, 1962, nor was any mention made of it in complainants' brief.

Lastly, it is charged that the action of the supervisors was illegal in that none of the conditions contained in section 301 (6) of the zoning ordinance was met. It will be noted that the resolution as adopted did contain certain conditions or restrictions. It provided (1) that no processing plant should be erected upon the land; (2) that no area within 100 feet of Morehall Rd. should be quarried, nor should any area within the same distance of any property line be quarried without the written consent of the adjoining owner; (3) that no area within 150 feet of Swedesford Rd. should be quarried; (4) that no primary blasting should be performed except between the hours of 3:00 and 5:00 p.m.; (5) that a fence therein described should be erected within the time stipulated; (6) that certain precautions should be observed in blasting and certain reports filed; and (7) that the permit shall be: "subject to all the provisions of the East Whiteland Zoning Ordinance." The requirements of the ordinance itself which have already been quoted in this opinion would seem to have been met by the restrictions so imposed.

However, it is contended that the primary condition imposed by the ordinance is that a permit can only be granted by the supervisors after the board of adjustment has recommended its issuance. This condition, say the complainants, has not been met in this case.

Valley Forge contends, on the other hand, that a favorable recommendation of the board of adjustment is not required by the language of the ordinance, and that if it is, then we are dealing with a substantive

matter; i.e., the matter of the supervisors' power to grant a permit in these circumstances, and that that is an inquiry which cannot be properly undertaken in statutory proceedings such as these in which legality is questioned, since our inquiry is here limited to the manner in which the resolution was passed and to procedural irregularity. We cannot believe that the supervisors intended by the language employed in the zoning ordinance to limit their permit-granting authority to those cases only in which a recommendation in favor of the permit was obtained from the board of adjustment. Had that been their intention, no purpose would have been served in reserving to the supervisors the final administrative act of issuing the permit itself. Under complainants' construction the final decision in many cases would have been vested in the board of adjustment, since a refusal of recommendation by that board would have been final and binding upon the supervisors.

Complainants, taking the position that the supervisors could refuse to issue a permit in all cases, but that they could not grant one without first having obtained the favorable recommendation of the board of adjusment, have cited no cases in support of that position. They do cite, however, definitions of the word "recommendation" set forth in Webster's New Collegiate Dictionary, such as, "A statement declaring that one recommends or expressing commendation". "Recommend" as defined by the same work is: "To commend; to offer or suggest with favoring representations".

We believe, however, that in defining a word contained in a statute or ordinance, its judicial construction as found in comparable cases ought to be followed. Thus, in People of Virgin Islands v. Price, 181 F. 2d 394 (3 Cir. 1950), a statute which provided that upon conviction of murder in the first degree, the jury

should "recommend" the punishment was under consideration. It was there held that: "To recommend is to present one's advice or choice or as having one's approval", citing Webster's New International Dictionary, 2d ed., unabridged, p. 2080. It was further noted that recommendation accordingly involves the idea that another has the final decision. In that statute, as in this ordinance, there was no express direction that the recommendation be carried into effect. Again, in Mora County Board of Education v. Valdez, 61 N. M. 361, 300 P. 2d 943 (1956), an action of mandamus to compel a county board of education to reinstate petitioners in their positions under a Teachers' Tenure Act, it was held that a recommendation, in this case by the State board of education, was not an act of final, decisive power—it merely suggested the desirability of a course of action to be followed by another. In Whittemore v. Town Clerk of Falmouth, 299 Mass. 64, 12 N. E. 2d 187 (1937), the Supreme Judicial Court of Massachusetts construed a statute which provided that no zoning ordinance should be adopted until the planning board had held public hearings and submitted a "final report with recommendations". It was there held that although the submission of a recommendation was a condition precedent to the valid adoption of the ordinance, . . ., "The word 'recommendation', in its context in this statute connotes advice based upon information and enlightenment elicited at a public hearing and upon study and reflection, to ascertain the wisest course for the town to pursue. It means that a permanent board of public officers whose duties relate to the study of means of improvement of general living conditions shall make a preliminary investigation and report with recommendations before the town may take action": (299 Mass. at 69, 12 N. E. 2d at 189). See also Gratton v. Conte, 364 Pa. 578 (1950), where, under the provi-

sions of the Act of March 31, 1927, P. L. 98, having to do with the adoption and amendment of zoning ordinances in second class cities, it was held that city council had the power to disregard the "recommendation" of the city planning commission on the legislative question as to whether or not the boundaries of a certain zoning district ought to be changed or altered.

In the light of the foregoing decisions, we are constrained to hold in this case that the language of section 301 (6) of the zoning ordinance now under consideration, to the effect that permits for quarrying may be issued "upon recommendation of the Board of Adjustment after public hearings" does not mean "upon favorable recommendation" of that board. We therefore conclude that by the board of adjustment's submission of its report or "decision" in this case, that procedural requirement necessary for the adoption of the resolution of December 26, 1961, had been met. Consequently that resolution, insofar as that question is concerned, has been legally adopted; there has been no procedural irregularity.

In view of the conclusion just expressed, we might well terminate this opinion at this point. It now becomes unnecessary for us to consider whether the question of the receipt by the supervisors of a favorable recommendation from the board of adjustment is substantive or procedural. If it falls within the former classification, then we would have no jurisdiction of it in this proceeding; if within the latter, then it is a matter properly cognizable under this complaint. In the interest of completeness, however, we believe that comment upon this point is appropriate.

We know first that matters of the power of municipal bodies to adopt ordinances and resolutions fall within the realm of substantive questions. A case so holding is McArthur v. Mt. Lebanon Township, supra,

where it was held that the power of a first class township to condemn land for purposes of a walkway for school children could not be attacked under the guise of a complaint against its legality provided for in section 1502 of The First Class Township Code of June 24, 1931, P. L. 2106, as amended, a provision similar to that of The Second Class Township Code, under which complainants are proceeding in this case. In Wynnewood Civic Association v. Lower Merion Township, supra, it was held that the question of whether or not a vote of three-fourths of the commissioners was required for the adoption of an amendment to the zoning ordinance was procedural, hence it could be reviewed by the court of quarter sessions upon a complaint such as the one in the instant case. In Eves v. Zoning Board of Adjustment, 401 Pa. 211 (1960), the validity of an ordinance amending the zoning ordinance was called into question because it was alleged that the amendments were not adopted pursuant to a "comprehensive plan" as required by the enabling act. In that case, the court of common pleas entertained jurisdiction of the appeal from the board of adjustment, the question there being one of the power of the supervisors to adopt the ordinance in question.

We, in our earlier decision upon the rescinding resolution of January 2, 1962, entertained jurisdiction under this same statutory procedure to consider the question of whether that resolution had been legally adopted when one of the supervisors whose vote was necessary for its passage was disqualified from voting because of personal interest. The Court of Quarter Sessions of Bucks County has adopted the same view: Bristol Township Zoning Ordinance Appeal, 7 Bucks 51 (1957).

So far as we have been able to learn, no rule of thumb has yet been announced by which the question

now under consideration can be readily decided. Perhaps no such rule is possible. In any event, we believe that the question here raised is one of the power of the supervisors to have taken the action here complained against. Having taken that view, we must then conclude that the question is one beyond our jurisdiction in this proceeding.

For all of the reasons hereinabove specified, we enter the following

<em>Order</em>

And now, June 27, 1962, the complaint is dismissed. Costs will be paid by the complainants.