## DANIEL PALMER *vs.* INHABITANTS OF HAVERHILL.

If a town directs its selectmen to contract for the building of a sewer of certain dimensions, "the proposals to be advertised, and the contract given to the lowest bidder," and they advertise for proposals to build a sewer according to specifications which prescribe different dimensions and which reserve to the selectmen "the right to reject all bids if none are satisfactory," one who makes the lowest bid in answer to this advertisement and under these specifications has no right of action against the town thereon, if the selectmen reject his bid; nor any right of action against the town for time and money spent in making estimates for it; nor does he acquire any such right by the fact that, at a subsequent town meeting, the selectmen report that the bids so far exceeded the amount anticipated that they were unwilling to take further action without direction of the town, and his bid is read, and a vote is passed referring "the whole subject matter" to the selectmen, and directing them "to build the sewer at the earliest possible moment."

CONTRACT on a bid made by the plaintiff to the selectmen of Haverhill for building sewers; and for time and money spent in preparing estimates therefor. In the superior court the facts were agreed substantially as follows:

In the warrant for the annual town meeting in March 1866, there were articles to see if the town would vote to build sewers on Main, White and Chestnut Streets. At an adjournment of this meeting, on March 26, it was voted " that the selectmen are hereby directed to contract for the building of" sewers in those streets, of materials and in a manner which the vote set forth in general terms, specifying, however, the dimensions of the sewers, "the proposals to be advertised in the papers and the contract given to the lowest bidder, he giving security for the satisfactory completion of the same." Under date of May 4, the selectmen signed a " Notice to contractors," and caused it to be published in the newspapers of the town, stating that sealed proposals would be received by them until May 31 "for the construction of about twenty-seven hundred feet of stone sewer, to be built in three separate sections. Plans and specifications may be seen on application to the selectmen. Parties wishing to contract for the above can bring in separate proposals for each section." And, on the plaintiff's application, they furnished him with a copy of the plans and specifications referred to, the latter containing this clause: " said selectmen reserving the right to

reject all bids, if none are satisfactory ; " and the dimensions of each section of sewer, according to these specifications, differing from those specified in the vote of the town on March 26. In pursuance of this published notice, the plaintiff spent some time and money in making estimates, and on May 31 presented a bid, which was lower than the only other bid received. One of the selectmen thereupon told him that " if the sewers were built, he was entitled to the job, but that they should not make any award under present circumstances to either of the bidders." The board made no award whatever, but caused another town meeting to be summoned for June 23, " to hear a report of the selectmen on the matter of the sewers which the town at the annual meeting voted to build, and to take such action in regard to said sewers as may seem proper ; " at which meeting they reported that the bids so far exceeded the amount anticipated that they were unwilling to take further action without the direction of the town, and the plaintiff's bid was read or stated, and a vote was passed " that the whole subject matter be referred to the selectmen, and that they be directed to build the sewers at the earliest possible moment." Afterwards the plaintiff addressed a letter to each of the selectmen, claiming that they were bound to award to him the contract in pursuance of his bid, offering to give security to their satisfaction, and notifying to them that he should take all necessary means to enforce his rights, if they should decline to make such an award. But the selectmen declined to comply with this demand, making, however, no objection to the sufficiency of the security tendered by the plaintiff; and offered the job at public auction, where it was bid off by another person.

The question of damages was reserved for submission to a jury, in case of the determination of the liability of the defendants. Judgment was ordered for the plaintiff; and the defendants appealed.

*S. B. Ives, Jr.,* for the plaintiff.

*D. Saunders,* (*C. Saunders* with him,) for the defendants.

FOSTER, J. In order to maintain this action the plaintiff must prove a contract between himself and the town. He

seeks to do so by showing that he was the lowest bidder who answered an advertisement inviting proposals to build a sewer, and that by the terms of the proposals he was as such entitled to the contract.

The advertisement of the selectmen refers to, and must manifestly be construed in connection with, the plans and specifications according to which the work was to be done. The advertisement alone would be unintelligible, and contains no description of the dimensions of the sewer, the place where or the materials of which it was to be built. But in the specifications the selectmen expressly reserve " the right to reject all bids if none are satisfactory." They did, in fact, inform the plaintiff that they should not make any award to either bidder. This was plainly a rejection of his bid; and he can claim no contract under the terms of the advertisement and specifications.

But he insists that the vote of the town instructing the selectmen to cause the sewer to be built contains no such reservation; that it must therefore be struck from the proposals as surplusage; and that he is consequently, as the lowest bidder, absolutely entitled to the contract. To this position it seems to us there are several conclusive answers. In order to bind the town as its agents, the selectmen must have pursued and conformed to the terms of the authority under which they were acting, namely, the vote of the town. But the dimensions of the sewer described in the specifications varied materially from those contained in the vote; and the selectmen had no power to contract on behalf of the town for the building of such a sewer as the one the plaintiff offered to construct.

Furthermore, if the selectmen had implied authority to insert the clause reserving a right to reject unsatisfactory proposals, there is no contract, as we have already seen. If they had no such right, nevertheless the clause cannot be rejected as surplusage. In that case, its insertion was a material departure from the authority conferred upon them by the vote. An offer to award a contract absolutely, to the lowest bidder, is by no means the same thing with a proposal for bids which reserves the right to reject all if they are unsatisfactory. The reservation of such an

option might deter bids, and cause higher prices to be named. When the selectmen inserted this clause, they did not comply with the vote ; and therefore the town was not bound to accept the plaintiff's offer.

The only proposal made by him was in answer to the advertisement and under the specifications. He can insist upon no contract except in connection with them. And the clause reserving to the selectmen the right to reject unsatisfactory bids is as much binding upon him as if he had expressly inserted in his offer the statement that he made it with the understanding that they had such an option, and subject to their right to exercise it if they saw fit.

As for the claim that the subsequent vote of the town amounted to a contract, we perceive no foundation for it whatever. The whole subject was referred to the selectmen, who were directed to build the sewer at the earliest possible moment. But this was no instruction that they should employ the plaintiff, or accept his offer to do the work. Far less was it an acceptance by vote of his previous offer.

The plaintiff's final claim is, that the town is at least bound to repay him for the money expended and labor performed in making estimates. There is certainly no evidence of any express promise to do so. And we are aware of no principle of law by which such a promise is implied under circumstances like the present. An obligation to pay an unsuccessful bidder for his time and trouble in making proposals would be extraordinary. The inducement to make such bids is the hope that they will be accepted, and a profitable contract thereby obtained. If the town is bound to pay this plaintiff, so it would also have been to pay every one else who had entered proposals, however many bidders there might have been.

On the agreed facts there must be

*Judgment for the defendants.*