DANIEL E. BARKER *vs*. INHABITANTS OF CHESTERFIELD.

The Sts. of 1863, *c*. 38, and of 1864, *c*. 103, and votes of a town passed in pursuance thereof, will not support an action for bounty by one who enlisted in the service of the United States after the passage of the former act and before the passage of the latter.

Oral promises of selectmen, unauthorized by any vote of the town, to pay a bounty to a soldier, will not sustain an action by him against the town for the bounty.

CONTRACT to recover $125 as a bounty for service in the army of the United States. The case was submitted to the judgment of the superior court, and, on appeal, of this court, upon a statement of facts of which the material part was as follows:

" The plaintiff reënlisted while in Virginia in January 1864, as a volunteer in the army of the United States, and caused his name to be credited to the quota of Chesterfield. Afterwards, while in that town upon a furlough, he had conversations with persons who were then the legally elected and acting selectmen of the town, a part or all of whom severally promised that he should receive for his enlistment the same bounty that others received, which was $125, but these conversations were had with said persons separately, and no action was ever taken by the selectmen when together, regarding the matter.

" At a meeting of the town held on April 11, 1864, the following articles in the warrant were acted upon: Art. 2. ' To see what the town will do in regard to raising money to procure recruits to fill the quota of this town under the last call of the President of the United States, or what order they will take.' Art. 3. ' To see if the town will raise money to refund what has been paid by individuals under the last call for five hundred thousand men.' The following were the votes passed thereon: Art. 2. ' Voted, to raise $125 for each volunteer required as a part of the quota of this town under existing calls of the President.' Art. 3. ' Voted to raise $875 to refund moneys paid by individuals to volunteers.'

" At another meeting of the town, held on June 13, 1864, the following article was contained in the warrant: Art. 2. ' To see what sum of money the town will raise for volunteers or to hire

substitutes for men who may be drafted into the service of the United States during the present year, or what order they will take thereon.' On this article the vote was as follows: Art. 2. ' Voted, to raise the sum of $125 for each man that may be called for by the general government during the present year, and that the selectmen be authorized to assess a tax for the same amount.' "

*D. W. Bond,* for the plaintiff, cited *Fowler* v. *Selectmen of Danvers,* 8 Allen, 80 ; *Freeland* v. *Hastings,* 10 Allen, 570 ; *Grover* v. *Pembroke,* 11 Allen, 88 ; *Mumford* v. *Hawkins,* 5 Denio, 355 ; *Bank of Vergennes* v. *Warren,* 7 Hill, 91 ; *Hitchcock* v. *Litchfield,* 1 Root, 206 ; *Bonnett* v. *Guildhall,* 38 Verm. 232 ; *Gale* v. *Jamaica,* 39 Verm. 610 ; *Johnson* v. *Newfane,* 40 Verm. 9 ; *Seymour* v. *Marlboro',* Ib. 171 ; *Kittredge* v. *Walden,* Ib. 211.

*G. M. Stearns,* for the defendants.

GRAY, J. Towns have no power to vote money to or for soldiers, except as authorized by statute. *Grover* v. *Pembroke,* 11 Allen, 88. *Copeland* v. *Huntington,* 99 Mass. 525. The statutes on which the plaintiff relies to justify the votes of the defendant town are those of 1863, *c.* 38, and 1864, *c.* 103.

The St. of 1863, *c.* 38, entitled " An act to legalize the doings of towns in aid of the war," was passed and took effect on the 27th of February 1863, and declared that " the acts and doings of cities and towns in paying or agreeing to pay bounties and recruiting expenses for soldiers already furnished by them, upon the requisition of the United States and upon the call of the governor for the present war, together with taxes that have been or may be assessed, and payments and obligations that have been or may be made or given by them for those objects, are hereby ratified, confirmed and made valid."

The whole scope and tenor of this statute are to confirm acts already done, not to authorize new proceedings in the future. Such is the natural import of the word " legalize " in the title, and of the words " ratified, confirmed and made valid " in the body of the statute. It does not undertake to legalize or make valid any acts or doings of towns in paying or agreeing to pay bounties or recruiting expenses, except " for soldiers already fur-

nished by them." It covers taxes which may be as well as those which have been assessed, and payments and obligations which may be as well as those which have been made or given, " for those objects " only, that is to say, " bounties and recruiting expenses for soldiers already furnished." It applies to no future steps to be taken by towns, except the assessment of taxes, making of payments, or giving of obligations, in carrying out and giving effect to previous acts and doings of towns, agreeing to pay such bounties and recruiting expenses. It did not therefore authorize the payment of any bounty to the plaintiff upon his reënlistment in January 1864.

The St. of 1864, *c.* 103, is entitled " An act to authorize towns and cities to raise money for recruiting purposes ; " was passed and took effect on the 18th of March 1864 ; and did not authorize the raising of money by towns for any purpose other than the payment of money, or reimbursement of money paid, to procure men to enlist in the military service of the United States. The object in view was not compensation for military service once entered upon, nor for completing quotas with men already enlisted, but for obtaining additional soldiers for the national armies. The first section only authorized towns or cities to raise and apply money, not exceeding one hundred and twenty-five dollars " for each volunteer enlisted in said service after the passage of this act, as a part of the quota of said town or city," under the orders of the President of October 17, 1863, and February 1, 1864. The second section authorized the raising of money only to pay and refund money already paid and applied by the town or city or contributed by individuals, not exceeding a like sum " for each volunteer already enlisted " in said service, as a part of such quota, under those orders. The money paid to the recruits under the first section, as well as that reimbursed to the town or city or to individuals under the second section, is described as applied " in aid of and for the purpose of procuring its proportion of the quota of volunteers in the military service, called for from the Commonwealth under the orders of the President," above mentioned.

In the light of these statutes, it is not difficult to ascertain the true interpretation and effect of the votes of the town. The two votes of the 11th of April, and the corresponding articles in the warrant, manifestly refer respectively to the two sections of the St. of 1864, above quoted. The vote " to raise one hundred and twenty-five dollars for each volunteer required as a part of the quota of this town," passed upon the article " in regard to raising money to procure recruits to fill the quota of this town," had relation to the first section of the statute, and to recruits to be procured to fill that quota, and did not include the plaintiff, who had already reënlisted in the army, and caused himself to be credited to the quota of this town, before the passage of the vote, and even before the passage of the statute. The other vote of April 11, like the second section of the statute, relates only to the reimbursement of money, and has therefore no application to the plaintiff, who had paid no money.

The vote of June 13th, to raise the sum of one hundred and twenty-five dollars " for each man that may be called for by the general government during the present year," could not, for the reasons already stated, consistently with the St. of 1864, apply to men who had reënlisted and been mustered into the service before the passage of the statute, and must therefore receive the construction, which its words would naturally indicate, of applying only to those who might be called for by the government after the passage of the vote.

It is hardly necessary to remark that the words " soldier " in the St. of 1863, " enlisted " in the St. of 1864 and the vote of April 11, and " reënlisted" in the statement of facts, all im ɔly being mustered and received into the military service of the United States, without which no one could be held as a soldier. *Tyler* v. *Pomeroy*, 8 Allen, 480.

In all the Vermont cases cited at the argument, the plaintiff was mustered into the military service after the passage of the vote sued upon, with the single exception of *Gale* v. *Jamaica*, 39 Verm. 610, in which a vote " to raise and give a bounty of five hundred dollars to each volunteer to fill the quota of that

Barker *v.* Chesterfield.

town under the last call of the President" was held to give a right of action to one who was mustered into the service the day before it was passed, because he first elected after its passage to credit himself to the quota of the town; and the report does not show what the statute was under which the town passed the vote.

So in *Hitchcock* v. *Litchfield*, 1 Root, 206, the statutes of Connecticut are not stated. But the vote of the town in. express terms included each soldier " who already hath or hereafter shall enlist into either of the continental battalions, now raising in this state, for three years or during the war," and within the quota of the town; it was not for the payment of an ordinary bounty in a single sum, but of a compensation for.future service, " after the rate of twelve pounds per annum, during the time of his continuance in said service after this day;" the plaintiff claimed payment for subsequent service only; and the case was decided upon these grounds. It is also to be observed that the vote was passed early in the Revolutionary War, years before the adoption of the Constitution of the United States and the grant of all powers of war and peace to the national government; and the judgment was given before the powers of towns had been the subject of such thorough judicial consideration as they have since received.

In the present case, the votes of the town cannot, consistently with their terms and with the provisions of the statutes under which they were passed, be construed as giving any right of action to. the plaintiff. Oral promises made to him by the selectmen, unauthorized by any vote of the town, could not bind the town in this matter. *Haliburton* v. *Frankfort*, 14 Mass. 215. *Goff* v. *Rehoboth*, 12 Met. 26. *Palmer* v. *Haverhill*, 98 Mass. 489. There must therefore be

*Judgment for the defendants*