HARRY H. CROSBY *vs.* BOARD OF ELECTION COMMISSIONERS OF NEWTON & others.

Middlesex.    March 9, 1966. — April 6, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Elections.*

That a signer of a petition under G. L. c. 54, § 135, for a recount in a municipal election took the oath required by the statute before a notary public who was also a signer of the petition did not constitute a violation of the statute.    [547]

A municipal election recount under G. L. c. 54, § 135, resulting in election of a candidate other than the one elected on the original count was not invalidated by certain technical deviations from the requirements of § 135 not shown to have affected the accuracy of the recount, or to have contributed to any fraud or wrongdoing, or to have harmed the candidate losing on the recount.    [547, 548]

PETITION for a writ of mandamus filed in the Supreme Judicial Court for the county of Middlesex on November 19, 1965, and transferred to the Superior Court.

The petitioner appealed from an order denying the petition after hearing by *Tomasello, J.*

*Walter Jay Skinner* for the petitioner.

*Charles H. McGlue* for the respondent H. James Shea, Jr.

REARDON, J.   This is a petition for a writ of mandamus brought against the respondent board of election commissioners of Newton to compel them to certify the election of the petitioner as ward alderman from Ward 7 of that city and to direct the city clerk, also a respondent, to issue a certificate of election of the petitioner.   The petition sought temporary restraining orders against the respondent Shea, who had also run for the office, to prevent him from taking any oath as Ward 7 alderman or "doing or purporting to do any official act or thing" in that office pending the determination of this case.   The petition alleged certain irregularities during the course of a recount on November 16, 1965, of votes which had been cast in the election two weeks before.   A temporary injunction issued against the respondent Shea as prayed for in the petition.   The matter came on for hearing before a judge of the Superior Court who filed a report of material facts, findings, rulings, and an order.   His report discloses the facts to be as follows.

The petitioner, the respondent Shea, and others ran for the office of alderman in Newton's Ward 7 district.   The vote which was certified by the board showed the petitioner as receiving 961 votes, Shea, 959, and one Norris, 953. Shea and Norris duly filed petitions seeking a recount. One of the signatories to the Shea petition served as a notary public before whom another signer of the same petition took the oath required by G. L. c. 54, § 135, attesting to the subscriber's belief that the record of the votes cast was erroneous.   While there were check marks beside each signer's name on both petitions, the board failed to comply with certain provisions of G. L. c. 54, § 135, in that it did not attach to each such petition a certificate to indicate that each contained at least ten signatures of persons who were voters in Ward 7.   The report of material facts is silent relative to the identity of the individual or indi-

viduals who made the check marks. The petitioner raised no issue at the recount relative to the validity of either petition.

At the recount thirty ballots were protested, sixteen of which were put in evidence at the hearing before the trial judge. Upon the protest of a ballot a piece of paper was stapled to the back of the ballot and upon that paper, rather than upon the ballot itself, all information required by the statute was transcribed and indorsed by the proper person.

The initial outcome of the election was reversed by the recount, the total of Shea's votes being adjusted to 961 and the petitioner's, to 957. The protested ballots were then placed in four envelopes, one for each of the four precincts in Ward 7, and although all the envelopes were properly labeled they were not all sealed according to the statutory requirements. One envelope was closed by seal, another by staples, and the remaining two were not sealed in any way. The board again failed to comply with G. L. c. 54, § 135, in neglecting to make and "sign a statement of . . . [its] determination of the questions raised" and decided relative to the protested ballots. The envelopes were then placed in a vault locked with two locks and two keys; one set of keys was retained by one of the election commissioners and the other by the respondent city clerk. At no time during the recount did the petitioner or his representatives protest the manner in which the protested ballots were indorsed or placed in the envelopes.

The judge ruled that the decisions of the board on each of the sixteen challenged ballots in evidence had been correct and that the recount was valid in that "for all intent and purposes the requirements of General Laws, Chapter 54, section 135 were fulfilled in carrying out the will of the voters of the City of Newton." He further ruled that Shea was the duly elected ward alderman from Ward 7 of the city.

The petitioner does not in his appeal challenge the judge's ruling that the board was not guilty of error in the

recount. He bases his case solely upon the proposition that there was a failure by the board to comply with statutory requirements, that therefore the recount is to be considered invalid, and that the original count, which has been shown to have been wrong, must be given effect.

1. It appears that all the departures from the statutory directions to which the petitioner points exist save one. While the practice of having the oath of the signer of a recount petition administered by a notary public who is also a signer is most certainly not to be encouraged, it does not violate G. L. c. 54, § 135. In addition, the petitioner has asserted that the recount petition of Norris was invalid because "it purports to require a recount by precincts," a procedure provided under G. L. c. 54, § 135, for towns divided into precincts. The petitioner argues that Newton, being a city, is not subject to the provisions of c. 54 relative to towns. G. L. c. 50, § 1, par. 23. Cf. G. L. c. 4, § 7, par. 34. Without deciding whether seeking a recount by precincts might make a recount petition wholly void, we note that the petition merely alludes to the existence of precincts and does not in any sense ask that the count be undertaken by precincts. In any event, the questions with which we deal are adequately posed by the Shea recount petition.

It is not alleged or indicated that such deviations from statutory direction as did occur may have upset the accuracy of the recount, nor is it alleged that violations of the statute were willful or so careless as to cast doubt upon that accuracy. It is not suggested that there occurred any fraud or wrongdoing in the recount of ballots to which deviations from the statute might have contributed. In sum, the petitioner has not shown that the technical variances from the statutory requirements worked harm on him. He has received, in fact, every advantage which technical compliance with the statute would have given to him. *Clancy* v. *Wallace*, 288 Mass. 557, 565.

2. In *Abbene* v. *Board of Election Commrs. of Revere*, 348 Mass. 247, this court had before it a case of an elec-

tion in which a certain candidate was the apparent victor through the effect of fraudulently marked ballots upon the totals. The recount there uncovered the fraudulent ballots and indicated in fact that another candidate had won. In that case, as here, the candidate who lost as a result of the recount sought to set aside the recount because in its course there had been slight departures from the requirements of G. L. c. 54, § 135. In the *Abbene* case, to have set aside the recount would have been to give effect to ballots originally counted for the intervener which had been fraudulently cast and which resulted in an erroneous count. In this case to set aside the recount would not give effect to fraudulent ballots but would nonetheless give effect to an erroneous count. The result of setting aside the recount would be the same in either case, a thwarting of "[t]he regnant design of all election laws . . . to provide expeditious and convenient means for expression of the will of the voters free from fraud." *Swift* v. *Registrars of Voters of Quincy,* 281 Mass. 271, 276. *Abbene* v. *Board of Election Commrs. of Revere,* 348 Mass. 247, 250. "The object of election laws . . . is to ascertain the popular will and to secure the rights of the duly qualified electors." *Clancy* v. *Wallace,* 288 Mass. 557, 566. *Swift* v. *Board of Registrars of Voters of Quincy,* 281 Mass. 271, 276. *Maiewski* v. *Board of Registrars of Voters of Deerfield,* 347 Mass. 681, 682–683.

While we do not condone careless or studied noncompliance with the procedures which the Legislature has ordered for election officials, in the instant case the deviations from the statute were nonharmful. There was substantial compliance so as to place before the court all protested ballots, thus satisfying the prime objective of the statute. *Abbene* v. *Board of Election Commrs. of Revere,* 348 Mass. 247, 250–251. To the extent that *Early* v. *Board of Registrars of Voters of Worcester,* 345 Mass. 47, may be inconsistent with this opinion we do not follow it.

*Order denying petition affirmed.*