LAWRENCE J. BARRETT & others *vs.* BUILDING INSPECTOR OF PEABODY & others.

Essex.    January 4, 1968. — March 8, 1968.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Zoning*, Validity, Spot zoning, Shopping center.  *Evidence*, Relevancy and materiality, Cumulative evidence.  *Error*, Whether error harmful.

An amendment of a zoning ordinance changing from residential to business the classification of a parcel of nearly fourteen acres lying in a valley at the center of an area having large residential developments on hills was not spot zoning or invalid in view of a proposed use of the parcel as a large shopping center with a branch bank and branch post office, of very substantial growth of the population of the area, of a lack of shopping facilities in the area beyond one grocery store and one gasoline station, of the presence of railroad tracks on one boundary of the parcel and nearby land zoned for industrial use and having a manufacturing plant on it and land zoned for business use but not well adapted for use as a shopping center, of suitability of the road network in the vicinity of the parcel, and of certain factors presenting serious difficulties in use of the parcel for residential development. [42]

A section of a zoning ordinance dealing with business districts, as applied to a parcel of land proposed to be used as a large shopping center, was not invalid in that it authorized a multitude of uses, some of which allegedly were not related to the public welfare. [42–43]

In a mandamus proceeding attacking the validity of an amendment of a zoning ordinance reclassifying a parcel of land from residential to business, there was no relevancy or materiality in, but no prejudicial

error in admitting in evidence, a petition to the city council signed by a large number of persons favoring the amendment [43], and a letter from a postmaster of the city to the planning board stating that the parcel was a desirable site for a post office and that he was in favor of the amendment [44–45].

On the issue of the validity of an amendment of a zoning ordinance reclassifying a parcel of land from residential to business, exclusion of testimony of an engineer that he could draft a design showing a satisfactory sewage disposal unit for each of a number of proposed residential lots on the parcel appearing on a plan prepared by him was not prejudicial where such testimony was merely cumulative of previous testimony by him that each of the lots was "able to take a single family dwelling with an individual sewage disposal unit." [43–44]

PETITION filed in the Superior Court on September 2, 1965.

The case was heard by *Macaulay, J.*

*John A. McNiff* for the petitioners.

*Lewis L. Wadsworth, Jr.* (*Donald J. Wood* with him) for the interveners.

*M. Irving Herbster,* City Solicitor, for the Building Inspector of Peabody & others, joined in a brief.

SPALDING, J. This is a petition for a writ of mandamus to compel the building inspector of the city of Peabody to enforce a zoning ordinance as it existed prior to an amendment adopted in July, 1965. The owners of the land (locus) affected by the amendment were permitted to intervene. The judge made detailed findings of fact and ordered the petition dismissed. From this order the petitioners appealed. G. L. c. 213, § 1D. The evidence is reported.

We summarize the findings of the judge as follows. The locus, a 13.83 acre parcel of land at the junction of Lowell and Russell streets in West Peabody, was classified Residence A–1 under a 1937 zoning ordinance. From 1930 to 1960 the locus was used as a mink farm. During that period it was so covered by trees that it had the appearance of a forest. In 1961 it was sold and the purchaser stripped a large portion of it of trees and topsoil, leaving it "denuded vacant land."

In 1964 the owners applied to the city for reclassification of the locus from a Residence A–1 district to a Business A

district as defined in § 6B of the zoning ordinance. After public hearings the planning board recommended the reclassification. A written protest was filed with the city clerk under G. L. c. 40A, § 7, and a public hearing was held by the city council. The amendment reclassifying the locus was duly adopted by the council on July 8, 1965, and was approved by the mayor on July 15.

The owners of the locus intend to construct on it a shopping center with a floor space exceeding 100,000 square feet and costing about $1,000,000. The plans contemplate a department store, a supermarket, various specialty shops, a branch bank, and a branch post office.

In all of West Peabody there is only one grocery store and one gasoline service station. There are no hardware stores, laundries or cleaning establishments, and no branch bank. In recent years there has been a substantial growth of population in West Peabody as shown by the fact that in 1950 the population was less than 1,000 and in 1966 it was in excess of 12,000. At present many of the residents have only inconvenient access to shopping facilities. As early as 1954 and 1956 professional planning engineers recommended the establishment of a shopping center in West Peabody. In 1961, pursuant to a recommendation of the planning board that the locus be rezoned, a referendum was held in which a slight majority of the voters favored rezoning.[1]

The locus is at the geographical center of West Peabody. It is a triangular parcel of vacant land, lying in a valley, with high hills rising to the north and south upon which there are two large residential developments known as Presidential Heights and Jordan Acres. It is bounded on the west by railroad tracks. To the west of the tracks there is also a parcel of property zoned for industrial use (the Jefferson premises) with a manufacturing plant on it. To the southwest of the locus is a fifty-eight acre tract which is

[1] The vote was 6,858 in favor and 6,324 against. Subsequently a decision in the Superior Court held that rezoning by referendum was illegal; from this decision no appeal was taken.

zoned for business. All of Peabody off Route 1 (which is the area known as West Peabody) prior to the amendment was in a residential zone except the fifty-eight acre tract and the Jefferson premises.

Although the fifty-eight acre tract is presently zoned Business B, it would appear not to be feasible for development as a shopping center. Of this tract, only two and one-half acres with frontage on Lake Street remain available for use as a shopping center. The Lake Street site would provide 8,460 square feet of store area whereas the locus can accommodate 100,000 square feet of store area and provide a greater variety of services. Moreover, the road network for a Lake Street shopping center is not as suitable as that in the vicinity of the locus. The land of the locus is fairly level in the easterly portion but gradually drops off to a two acre swamp in the southwest. The soil is suitable from a weight-bearing standpoint for one and two story residences as well as for the buildings of a shopping center.

Directly opposite the locus to the southeast is Crystal Lake which occupies twenty-five acres. Because of ground-water seepage from the lake to the locus, the water table of the locus, considered as a whole, is only two or three feet below the surface. The high water table presents serious drainage problems for the construction of dwellings. Houses could not be built with useful full basements. Slab foundations for houses would be feasible in areas away from the swamp, but even these would encounter difficulties in sewage disposal.

The nonswamp portions of the locus also present problems for residential construction. Owing to a ten to fifteen foot decline from Russell Street, driveways would be steeper than desirable. Because of water problems, the triangular shape of the locus and the presence of a railroad track and an industrial area nearby, the judge concluded that it was not suitable for residential development.

The petitioners contend that the rezoning of the locus is invalid as "spot zoning" and that § 6B of the zoning ordinance violates G. L. c. 40A because of the multitude of

uses authorized. The petitioners also complain of several rulings on evidence.

1. The petitioners argue that the amendment is not in furtherance of any general plan of zoning and that what is needed is a small neighborhood shopping center rather than the proposed 13.83 acre center. We are not persuaded that this is so. Provision for stores and shops near large residential districts has been held to come within the public welfare purposes of the zoning act. *Lanner* v. *Board of Appeal of Tewksbury*, 348 Mass. 220, 228–229. Professional planners, the planning board, and the city council favored establishment of a shopping center for West Peabody. Moreover, there was ample evidence that the increased population of West Peabody was not adequately served by existing shopping facilities. Given these facts, we cannot say that the amendment was unreasonable. The governing principles have often been stated and need not be repeated. See *Caires* v. *Building Commr. of Hingham*, 323 Mass. 589, 594–595; *Shapiro* v. *Cambridge*, 340 Mass. 652, 658; *Lanner* v. *Board of Appeal of Tewksbury*, 348 Mass. 220, 227–228.

The facts do not indicate that the amendment amounts to a "spot zoning." We agree with the findings of the judge that the land was distinguishable from the surrounding residential areas and that its suitability for general residential development was, at best, doubtful. As the judge stated, the city council could reasonably determine that the establishment of a shopping center at a focal point of the community would provide for the present and future needs of West Peabody. Such a determination comes within the statutory purposes of zoning. See G. L. c. 40A, § 2. "Where the reasonableness of a zoning by-law is fairly debatable, then the judgment of the local legislative body upon which rested the duty and responsibility for its enactment must be sustained. . . . Indeed, it has been said that the necessity for legislation, like questions of expediency and the wisdom of an enactment, lie outside the judicial realm." *Caires* v. *Building Commr. of Hingham*, 323 Mass. 589, 594–595.

2. The petitioners argue that § 6B of the zoning ordinance

is unreasonable and invalid as applied to the locus. This argument is based upon the fact that § 6B authorizes a multitude of uses, many of which, it is alleged, have no substantial relation to the public welfare. There is nothing in this point. The uses authorized are not illegal nor is it shown that permitting them in a Business A district results in arbitrary classification. There is no principle that only those uses may be provided in a zoning by-law or ordinance that are found to be affirmatively in the public welfare. There are sufficient standards for the special permits authorized for certain uses under § 19 of the zoning ordinance. *Burnham* v. *Board of Appeals of Gloucester*, 333 Mass. 114, 118. The case of *Clark* v. *Board of Appeals of Newbury*, 348 Mass. 407, cited by the petitioners, is distinguishable. There the by-law gave the selectmen what in effect was a roving commission to indulge in spot zoning. That is not the situation here.

3. We turn to certain rulings on evidence of which the petitioners complain.

(a) At the hearing before the city council a petition containing the signatures of 1,016 persons favoring the zoning change was introduced. The judge in the Superior Court admitted it in evidence. Evidence of this sort is of no consequence in a proceeding to determine the validity of a zoning by-law or ordinance. The issue in such cases is whether the action taken by the legislative body was reasonable. The private views, desires or motives of individual citizens are immaterial. *Simon* v. *Needham*, 311 Mass. 560, 565–566. *Caires* v. *Building Commr. of Hingham*, 323 Mass. 589, 595–596. *Raymond* v. *Commissioner of Pub. Works of Lowell*, 333 Mass. 410, 412. But there was no prejudice from this evidence. All that it did was to show that certain citizens supported the council's vote to rezone. That did not bear on the issue of the validity of the vote. It does not appear from his findings that the judge placed any reliance on this evidence. But in any event his conclusions were amply supported by the other evidence in the case.

(b) One Hancock, a civil engineer, was a witness for the

petitioners. His work as an engineer "related [to] sanitary engineering where it pertained to design of individual sanitary systems for houses." He testified on the basis of his examination of the locus that each of the lots shown on a plan which he had made was "able to take a single family dwelling with an individual sewage disposal unit." On cross-examination it appeared that the witness had examined the locus for an hour, was not an expert on soil mechanics, and his opinion as to whether sewage disposal was feasible was based on his observations of the soil rather than from tests. The plan prepared by the witness (but never approved by the planning board) showing the lay-out of twenty-four house lots on the locus was introduced as a chalk (No. 47). Counsel for the petitioners asked him the following question, "Well, assuming now that you sat down and on the basis of your present knowledge were asked by the Planning Board or Board of Health or anybody that has jurisdiction over individual sewage disposal units, tell his Honor whether or not . . . you would be prepared to draft for each one of those houses shown on Chalk 47 a sewage disposal unit?" Upon objection the judge excluded the question, apparently because it was based on "observation of the soil conditions that . . . [the witness] saw above the ground." The expected answer was that the witness would be able to draft a design showing a satisfactory sewage disposal unit for each house. There was no error. It is apparent that the judge felt that the witness' knowledge of the soil conditions was insufficient. But apart from this it is difficult to see how the petitioners were harmed. The witness had already testified that the lots were capable of being developed for residences with individual sewage disposal units. The answer to the excluded question would have been merely cumulative.

(c) One Sullivan, postmaster of Peabody, was called by the interveners and respondents and was asked if he had written a letter to the planning board and he stated that he had. Counsel for the interveners then offered the letter and it was admitted subject to the petitioners' exception. In

the letter Sullivan in substance stated that the locus was a desirable site for a new post office and that he was in favor of the proposed rezoning. There was no harmful error. What the planning board was told by those favoring or opposing rezoning was of no consequence. The board was charged with the duty of submitting to the city council its report and recommendations. This report was a condition precedent to the adoption of the ordinance. G. L. c. 40A, § 6. But the evidence heard by the board was of no materiality in a court proceeding to determine the validity of the ordinance. The letter objected to ought not to have been received but its admission for the reasons set forth above in (a) was of no consequence.

(d) The other exceptions to rulings on evidence have been examined and we perceive no error; there is nothing in any of them that merits discussion.

*Order for judgment affirmed.*