TOWN OF CANTON *vs.* NICHOLAS BRUNO & another.

Norfolk.    September 17, 1971. — April 18, 1972.

Present: TAURO, C.J., CUTTER, REARDON, BRAUCHER, & HENNESSEY, JJ.

*Zoning*, Validity, Adoption of original by-law or ordinance, Special
zoning board, Nonconforming use or structure. *Statute*, Retroactive
statute, Validating statute. *Canton*. *Words*, "Confirmed."

Adoption by a town meeting of an original zoning by-law was invalid
where a zoning board formed in accordance with the vote of a
previous town meeting submitted the required report with recom-
mendations, rather than the planning board or a zoning board
appointed by the selectmen as required by G. L. c. 40, § 27, as
appearing in St. 1933, c. 269, § 1.  [601–605]

St. 1949, c. 178, validating Canton's zoning by-law of 1937 in so
far as it was "invalid by reason of failure to comply fully with
provisions of law regulating the adoption of zoning by-laws"
was intended to be retroactive in operation and validated the
1937 zoning by-law ab initio.  [606–608]

Use of land in violation of a purported zoning by-law did not create
a substantive right on the basis of a protected nonconforming use
where the zoning by-law was subsequently adjudicated to be
invalid because of a defect in the process of adoption, but legisla-
tion retroactively validated the by-law.  [608–610]  CUTTER, J.,
concurring in the result on the ground that the by-law was validly
adopted.

BILL IN EQUITY filed in the Superior Court on May
11, 1967.

The suit was heard on a master's report by *Cahill, J.*,
and was reported by him without decision.

*Eugene J. Galligan,* Town Counsel, for the plaintiff.
*Joseph G. Galligan, Jr. (Thomas W. Crosby* with him)
for the defendants.

TAURO, C.J.   By this bill in equity under G. L. c. 40A,
§ 22, as amended, the town seeks to enjoin the defendants
from excavating or removing, or permitting the exca-
vation or removal of, gravel or other earth material from
land owned by them in violation of Canton's zoning by-
law.   A master's report was confirmed and the case is

reported without decision by a judge of the Superior Court.  G. L. c. 214, § 31.

1. The issue is whether the defendants are entitled to claim a prior nonconforming use.   G. L. c. 40A, § 5.[1] The original Canton zoning by-law adopted on March 8, 1937, contained no reference to the removal of sand and gravel, and the by-law precluded any use of property not expressly allowed in it.   Concerning the discontinuance of nonconforming uses, the by-law provided in relevant part as follows: "In residence districts, when a non-conforming use has been discontinued for a period of two years, it shall not be re-established and future use shall be in conformity with this By-Law."  From 1937 to March, 1960, the defendants' land was in a residential district.[2]   In the 1930's, a portion of the land was used as a gravel pit.   This use, however, was discontinued in 1936, prior to the adoption of the original zoning by-law, and there was no further gravel removal until 1945. Thereafter, there was continuous removal of sand and gravel by prior owners and, since 1956, when the defendants acquired title, by the defendants.   An order temporarily restraining the defendants from further operation was issued at the commencement of this suit in May, 1967.   Since 1950, the removal of soil, loam, sand, and gravel from any land in Canton has been subject to a special permit requirement under certain earth

---

[1] "[A] *zoning ordinance or by-law or any amendment thereof shall not apply* to existing buildings or structures, nor *to the existing use* of any building or structure, or *of land to the extent to which it is used at the time of adoption of the ordinance or by-law,* but it shall apply to any change of use thereof and to any alteration of a building or structure when the same would amount to reconstruction, extension or structural change, and to any alteration of a building or structure to provide for its use for a purpose or in a manner substantially different from the use to which it was put before alteration, or for its use for the same purpose to a substantially greater extent" (emphasis supplied).

[2] The parties have so stipulated per our order of November 10, 1971. Since March, 1960, the defendants' land has been in a limited industrial district.   The earth removal regulations, whose application is the subject of this suit, were first adopted prior to the change of zoning and, in so far as is pertinent here, apply alike to residential and industrial districts.

removal regulations in the zoning by-law.[3]   The defendants, however, never applied for a permit in the belief that, by virtue of G. L. c. 40A, § 5, and the terms of the present zoning by-law,[4] they were entitled to continue the removal of gravel as a prior nonconforming use.

Whether the defendants' claim has merit depends upon the legal status of the excavation from 1945 until the adoption of the special permit requirement in 1950. The defendants contend that the original Canton zoning by-law, which, by implication, prohibited gravel pits, was not validly adopted in 1937, and that curative legislation enacted by the Legislature (St. 1949, c. 178) was

---

[3] A revised zoning by-law, adopted by the town of Canton on March 9, 1959, contained a "Section X, Earth Removal Regulations." Subsection "A, Permit Required," as amended, provides in relevant part: "In any Single Residence Districts or General Residence Districts the removal of soil, loam, sod, peat, sand, gravel, stone or other earth material is prohibited except that the removal of excess of said earth materials required for the execution of a subdivision plan as approved by the Planning Board shall, except as hereafter provided, be allowed only in accordance with a special permit therefor issued by the Board of Appeals in accordance with the procedure hereafter set forth for special permits.   The removal of soil, loam, sod, peat, sand, gravel, stone or other earth material from other than Single Residence Districts or General Residence Districts shall, except as hereafter provided, be allowed only in accordance with a special permit therefor issued by the Board of Appeals."   Predecessor provisions adopted on March 13, 1950, March 9, 1953, and December 10, 1957, were similar in effect.

[4] "Section X, Earth Removal Regulations."   Subsection "D, Existing Operations," as amended, provides in relevant part: "A sand or gravel pit quarry or other earth removal activity in lawful operation on any parcel of land on the date of the adoption of this By-Law may continue unless and until abandoned, or if operating under a prior permit issued by the Board of Selectmen until the expiration thereof. Discontinuance for more than twelve (12) consecutive months shall be deemed to constitute abandonment.   However, unless specifically authorized by such prior permit or by a new permit issued hereunder: (1) the depth of excavation shall not be increased below the grade of the lowest general excavated area on said date of adoption, (2) the total area of excavation within the parcel shall not be increased by more than fifty (50) per cent over its area on said adoption date, and (3) the average amount of materials extracted or removed per day shall not be increased by more than fifty (50) per cent over such daily average for the twelve (12) consecutive months preceding said adoption date (or for the actual period of operations, if less than twelve months)."

not retroactive in effect. For these reasons, they maintain that in 1945, their predecessor in title had the right to reëstablish the sand and gravel operation discontinued in 1936. The town argues to the contrary.

2. We turn first to whether the original Canton zoning by-law was validly adopted in 1937. If we conclude that it was, we need not consider the effect of the curative legislation. St. 1949, c. 178.

The statute governing the adoption of zoning by-laws in 1937 was G. L. c. 40, § 27, as appearing in St. 1933, c. 269, § 1 (now G. L. c. 40A, § 6, as amended through St. 1968, c. 194). It provided in relevant part as follows: "*Such ordinances or by-laws may be adopted* and from time to time be changed by amendment, addition or repeal, *but only in the manner hereinafter provided.* No ordinance or by-law originally establishing the boundaries of the districts or the regulations and restrictions to be enforced therein, and no ordinance or by-law changing the same as aforesaid, shall be adopted until after the planning board, if any, or, in a town having no such board, the board of selectmen, has held a public hearing thereon after due notice given and has submitted a final report with recommendations to the city council or town meeting; *provided that, in case of a proposed ordinance or by-law originally establishing the boundaries of the districts or the regulations and restrictions to be enforced therein, it shall be sufficient if a public hearing is held and a final report with recommendations submitted by a zoning board appointed for the purpose by the city council or selectmen*" (emphasis supplied).

In so far as is pertinent here, the master found that the original Canton zoning by-law was adopted in the following manner: At a town meeting held on July 16, 1936, it was voted to form a zoning board "to take all steps necessary to present a set of complete town zoning laws at the next special or annual town meeting." The vote provided that this board consist of seven members, two appointed by the planning board, two by the war-

rant committee, two by the taxpayers' association, and one by the board of selectmen. A board was formed in accordance with the vote and, after causing notice to be published in the Canton Journal, it held a public hearing on November 9, 1936. A week later, on November 16, 1936, the board submitted a report to a special town meeting which accepted the report but postponed consideration for the time being. Subsequently, the zoning board, together with the planning board, held two additional public hearings after appropriate notice was given in the town newspaper. On March 8, 1937, the zoning board submitted a final report to the annual town meeting, which voted to adopt the zoning by-law recommended in the board's report. The zoning by-law was approved by the Attorney General and published three times in the town newspaper in accordance with law. See G. L. c. 40, § 32, as amended by St. 1933, c. 185, § 1 (now G. L. c. 40, § 32, as amended through St. 1967, c. 308).

From these findings it appears that the board which prepared the original zoning by-law was not constituted in accordance with the Zoning Enabling Act. Under G. L. c. 40, § 27, as appearing in St. 1933, c. 269, § 1, the function of recommending zoning by-laws was assigned to the planning boards in towns with such boards, with the proviso that, in the case of proposals for original zoning by-laws, the towns could utilize special boards appointed by the selectmen. Compare G. L. c. 40A, § 6, as amended through St. 1968, c. 194. The sole function of the town meeting was to act upon the final report and recommendations of the planning board or, as the case might be, the special board appointed by the selectmen. G. L. c. 40, § 27, as appearing in St. 1933, c. 269, § 1. See *Barrett* v. *Building Inspector of Peabody,* 354 Mass. 38, 45; *Poremba* v. *Springfield,* 354 Mass. 432, 436; Hardy, Municipal Law, § 349. In the instant case, these procedures were not followed. By vote of the town meeting, a special board was established consisting of representatives of four separate groups and including only one person named by the selectmen. While it was

permissible to utilize a special board, the town meeting had no authority to designate a method of selection contrary to the method prescribed by the Legislature. Under the Zoning Enabling Act, it lay only in the selectmen to appoint the membership of the special board. G. L. c. 40, § 27, as appearing in St. 1933, c. 269, § 1.

The town urges us to adopt a doctrine of substantial compliance. We believe, however, that the Legislature mandated a rule of strict compliance by the plain language, "[Zoning] ordiances or by-laws may be adopted . . . *but only in the manner . . . provided*" (emphasis supplied). G. L. c. 40, § 27, as appearing in St. 1933, c. 269, § 1.[5] We said in *Leahy* v. *Inspector of Bldgs. of New Bedford,* 308 Mass. 128, 131: "The General Court was empowered by art. 60 of the Amendments to the Constitution of this Commonwealth 'to limit buildings according to their use or construction to specified districts of cities and towns.' The Legislature could itself exercise this power and establish such districts in any city or town . . . [see] *Bradley* v. *Zoning Adjustment Board of Boston,* 255 Mass. 160, or it could delegate the power to create such local districts to the legislative branch of a city government and to the voters of a town. *Spector* v. *Building Inspector of Milton,* 250 Mass. 63. But the Legislature could determine the extent of the power granted . . . and prescribe the terms and conditions under which it could be exercised, and action taken

---

[5] The town bases its argument not upon zoning cases but upon *Abbene* v. *Board of Election Commrs. of Revere,* 348 Mass. 247, and *Crosby* v. *Board of Election Commrs. of Newton,* 350 Mass. 544, involving the electoral recount law. G. L. c. 54, § 135. In both cases, we upheld recounts conducted at slight variance with statutory procedures, on the basis that the procedures actually followed had secured the popular will and no more was required. *Abbene* v. *Board of Elections Commrs. of Revere, supra,* at 250. *Crosby* v. *Board of Election Commrs. of Newton, supra,* at 548. The Zoning Enabling Act and the election laws, however, serve significantly different ends, and we are of the opinion that neither the *Abbene* case nor the *Crosby* case has appropriate application to the facts of the instant case. General Law c. 54, § 135, does not contain the explicit mandate which we rely on here. Furthermore, it does not involve a delegation of the General Court's legislative power, which we have been zealous in guarding against infringement by cities and towns.

beyond the authority conferred or not in compliance with the terms and conditions governing its exercise would be invalid." See *Whittemore* v. *Town Clerk of Falmouth* 299 Mass. 64, 68–69; *Fish* v. *Canton,* 322 Mass. 219, 222; *Atherton* v. *Selectmen of Bourne,* 337 Mass. 250, 254–256; *Kitty* v. *Springfield,* 343 Mass. 321, 324–327; *Hallenborg* v. *Town Clerk of Billerica,* 360 Mass. 513, 520; Hardy, Municipal Law, §§ 151, 164.[6] Compare *Durand* v. *Superintendent of Pub. Bldgs. of Fall River,* 354 Mass. 74, 76–77.

While we have said that a court will consider "whether an asserted minor noncompliance in fact is significantly inconsistent with, or prejudicial to, the apparent legislative objectives of the prescribed procedures [for adopting zoning by-laws]" (*Hallenborg* v. *Town Clerk of Billerica, supra,* at 517), we cannot say here that there was no important legislative purpose in the statutory provision concerning the manner of selecting a special zoning board. "The intent of the statute is to be ascertained from all its terms and parts . . .." *Tilton* v. *Haverhill,* 311 Mass. 572, 577–578. Read as a whole, the statutory provision under consideration evinces a legislative intent to place the recommending and legislative functions in separate municipal bodies. G. L. c. 40, § 27, as appearing in St. 1933, c. 269, § 1. See *Planning*

---

[6] Authorities in other jurisdictions include *Treat* v. *Town Plan & Zoning Commn. of Orange,* 145 *Conn.* 136, 139 ("Compliance with the statutory procedure was a prerequisite to any valid and effective amendment"); *Bisson* v. *Milford,* 109 N. H. 287, 287–289 (zoning enabling act "define[s] both the extent of the authority and the procedure to be followed in adopting . . . [a zoning] ordinance"); *Merritt* v. *Portchester,* 71 N. Y. 309, 311 (statutes affecting property "must be strictly pursued, and any departure, in substance, from the formula prescribed by law vitiates the proceedings"); *Williston Park* v. *Israel,* 191 Misc. (N. Y.) 6, 9 (applying doctrine of *Merritt* case to zoning ordinance); *Mazeika* v. *American Oil Co.* 383 Pa. 191, 194, ("Zoning being statutory, . . . [w]hen a procedure is stipulated . . . its provisions must be strictly pursued"); *Corcoran* v. *Bennington,* 128 Vt. 482, 493 ("strict compliance with the required procedures is the rule if a municipality is to have the right to exercise zoning authority"). See, generally, Anderson, Am. Law of Zoning, §§ 4.05, 4.06; McQuillin, Municipal Corporations (3d ed.) §§ 16.10, 20.01; Rathkopf, The Law of Zoning and Planning, c. 8, § 2; Yokley, Zoning Law and Practice, § 5–4.

*Bd. of Reading* v. *Board of Appeals of Reading,* 333 Mass. 657, 662; *Barrett* v. *Building Inspector of Peabody,* 354 Mass. 38, 45. Such a purpose is common in statutes governing zoning (see *Poremba* v. *Springfield,* 354 Mass. 432, 436–437 [involving G. L. c. 41, § 81I]), and is generally thought to be a means of reducing political pressures. See Anderson, Am. Law of Zoning, §§ 4.10, 17.18. In the instant case, the town meeting divested the planning board of the recommending function and placed that function in a board of its own creation. If the town chose not to rely on the planning board, the selectmen should have named a special zoning board in accordance with the statute.[7]

Since the statutory provisions "are peremptory to the effect" that no original zoning by-law may be adopted except in the prescribed manner (see *Whittemore* v. *Town Clerk of Falmouth,* 299 Mass. 64, 68), we are confronted with a serious question of jurisdiction which cannot be waived by the parties or lessened by the passage of time. A report of the planning board or, in lieu thereof, a report of a special board appointed by the selectmen was a condition precedent to the adoption of an original zoning by-law. G. L. c. 40, § 27, as appearing in St. 1933, c. 269, § 1. See *Barrett* v. *Building Inspector of Peabody,* 354 Mass. 38, 45. Although a report was submitted, it was not the report of the planning board or of its legal equivalent. In these circumstances, the town meeting had "no jurisdiction to take up the consideration of the merits of [the proposed by-laws]" *Whittemore* v. *Town Clerk of Falmouth, supra,* at 68), and without jurisdiction the action of the town meeting in adopting it was a nullity.

---

[7] The action of the town selectmen in seeking legislation in 1949 to validate the 1937 zoning by-law retroactively and the action taken by the Legislature in the enactment of validating legislation (see this opinion, *infra*), give further support to the notion that the 1937 zoning by-law was not adopted "in the manner . . . provided" (G. L. c. 40, § 27, as appearing in St. 1933, c. 269, § 1), and, further, that neither the town nor the Legislature considered the deviation from statutory requirements to be trivial. There is no valid reason for us to do so now.

3.  We now consider the effect of the curative legislation.  Even if the town's action in 1937 was "not in compliance with the terms and conditions [of the Zoning Enabling Act]" (*Leahy* v. *Inspector of Bldgs. of New Bedford*, 308 Mass. 128, 131), the town is entitled to an injunction against the defendants' gravel removal operation if St. 1949, c. 178, validated such action.  The statute is entitled "An Act validating the zoning by-laws of the town of Canton," and provides in relevant part as follows: "Section 1. The zoning by-laws of the town of Canton adopted on March eighth, nineteen hundred and thirty-seven, are hereby validated and confirmed if and in so far as they are invalid by reason of failure to comply fully with provisions of law regulating the adoption of zoning by-laws."

It is our duty in construing a statute to discern the intent of the Legislature on the basis of all pertinent evidence.  See *New York Cent. R.R.* v. *New England Merchants Natl. Bank*, 344 Mass. 709, 713.  As a general matter, "all statutes are prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication from their words, context or objects when considered in the light of the subject matter, the pre-existing state of the law and the effect upon existent rights, remedies and obligations."  *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 3.  *Yates* v. *General Motors Acceptance Corp.* 356 Mass. 529, 531.  *Kagan* v. *United Vacuum Appliance Corp.* 357 Mass. 680, 683.  If it appears by necessary implication from the words, context or objects of a particular enactment that the Legislature intended it to be retroactive in operation, this court will give effect to the intent of the Legislature in so far as the State and Federal Constitutions permit. Cf. *Opinion of the Justices*, 330 Mass. 713, 726.

In the instant case, there are several factors which indicate that the Legislature intended St. 1949, c. 178, to be retroactive in operation.  A validating statute, by its very title, is one designed to cure past errors, omissions,

and neglects, and thus to make valid that which before
its enactment was invalid. *Ivanhoe Irrigation Dist.* v.
*All Parties & Persons,* 47 Cal. 2d 597, 644, revd. on
other grounds sub nom. *Ivanhoe Irrigation Dist.* v.
*McCracken,* 357 U. S. 275, reh. den. 358 U. S. 805.
*Yelton* v. *Plantz,* 226 Ind. 155, 163–164. *Wichelman* v.
*Messner,* 250 Minn. 88, 107. *State ex rel. Strenge* v.
*Westling,* 81 S. D. 34, 39. See *Northampton Borough's
Appeal,* 149 Pa. Super. 142; 82 C. J. S., *Statutes,*
§ 430. Here, the legislative history of St. 1949, c. 178,
is that the State representative for Canton, Dedham and
Needham submitted the legislation on behalf of a Canton
selectman and that the General Court approved the
bill as filed. See 1949 House Doc. No. 2082. See also
1949–1950 Manual for the General Court 161, 441. In
these circumstances, it necessarily appears that the object
of the Legisalture was to validate the original Canton
zoning by-law ab initio. Otherwise, action by the Legis-
lature was unnecessary, since the town itself could have
given the by-law future effect, if that was all that was
desired, merely by readopting the original measure in
the proper manner. Furthermore, this court has given a
retroactive construction to language similar to that in
the present statute in *Gray* v. *Salem,* 271 Mass. 495.[8]

The Legislature may confirm and validate the action
of a town which is void by reason of some irregularity
or failure to comply with the law if the Legislature could
have originally authorized the action, provided that

---

[8] An additional consideration is G. L. c. 4, § 6, Third, which provides
that words in statutes shall be construed in accordance with "the
common and approved usage of the language." We note that St. 1949,
c. 178, both "validated *and* confirmed" (emphasis supplied) the orig-
inal Canton zoning by-law. "Confirm" normally means to establish
the certainty of that which was previously uncertain (see *State ex rel.
Sherrill* v. *Milam,* 113 Fla. 491, 539–540), and also to ratify what has
been done without authority or insufficiently (see *Succession of Glaze,*
203 So. 2d 842, 845 [La.], and *Vermont Shade Roller Co.* v. *Burlington
Traction Co.* 102 Vt. 489, 498). Construing St. 1949, c. 178, to give
effect to the word "confirmed," it would appear that the Legislature
intended to ratify the adoption by Canton of the original zoning by-
law. Confirmation or ratification would relate back to the act
confirmed or ratified. Cf. *Barker* v. *Chesterfield,* 102 Mass. 127, 128–
129.

vested rights are not impaired by the curative legislation. *Spaulding* v. *Nourse,* 143 Mass. 490, 494. *Gray* v. *Salem, supra,* at 498. *Donnelly* v. *Dover-Sherborn Regional Sch. Dist.* 341 Mass. 497, 502. *Opinion of the Justices,* 360 Mass. 894, 897. See *Campbell* v. *Boston,* 290 Mass. 427. See also *Anderson* v. *Santa Anna,* 116 U. S. 356; *Bolles* v. *Brimfield,* 120 U. S. 759; *Allegan* v. *Consumers' Power Co.* 71 F. 2d 477 (6th Cir.), cert. den. sub nom. *Consumers Power Co.* v. *Allegan,* 293 U. S. 586. See, generally, McQuillin, Municipal Corporations (3d ed.) § 16.94. A validating act is constitutionally defective, however, to the extent that it impairs the vested rights of property owners. *Nichols* v. *Commissioner of Pub. Welfare,* 311 Mass. 125, 128–129. *Opinion of the Justices, supra,* at 897. While the defendants in this case contend as a matter of statutory construction that St. 1949, c. 178, should not be construed as retroactive in application, they raise no objection under art. 10 of the Declaration of Rights of the Massachusetts Constitution or under the Fourteenth Amendment of the United States Constitution. We are satisfied that retroactive application in the instant case poses no constitutional difficulty.

We perceive no impairment of any substantial right or equity of the defendants in the circumstances of this case. As was observed in *Hallenborg* v. *Town Clerk of Billerica,* 360 Mass. 513, 518, fn. 5, "[it is] a very common and not unreasonable practice of lawyers and others interested in land matters to rely upon published zoning by-laws . . . without making any detailed investigation of the proceedings by which they were adopted." This practice accords with the rule of law that there is a presumption in favor of the validity of a municipal ordinance or by-law. *Concord* v. *Attorney Gen.* 336 Mass. 17, 25, and cases cited. *Schertzer* v. *Somerville,* 345 Mass. 747, 751. See McQuillin, Municipal Corporations (3d ed.) § 20.16. Since 1904, the laws of this Commonwealth have required the submission of town by-laws to the Attorney General for his approval. G. L. c. 40,

§ 32, as amended through St. 1967, c. 308.   See *Concord* v. *Attorney Gen. supra,* at 22; Hardy, Municipal Law, § 165.   In the instant case, since the original Canton zoning by-law had been approved by the Attorney General in 1937 (under G. L. c. 40, § 32, as then in effect [St. 1933, c. 185, § 1]), it had at least prima facie validity in 1945, when the defendants' predecessor in title reopened the gravel pit which had been discontinued in 1936.   By 1945, the original zoning by-law prohibiting the resumption of discontinued nonconforming uses had been on the town books for about eight years, and if the predecessor in title felt a need to test its validity, he could have brought a petition in the Land Court for a judicial determination.   G. L. c. 240, § 14A, inserted by St. 1934, c. 263, § 2.

We agree with the Supreme Court of the United States that "[there is] a distinction . . . between a bare attempt of the legislature retroactively to create liabilities for transactions which, fully consummated in the past, are deemed to leave no ground for legislative intervention, and the case of a curative statute aptly designed to remedy mistakes and defects in the administration of government where the remedy can be applied without injustice."   *Graham & Foster* v. *Goodcell,* 282 U. S. 409, 429.   *Swayne & Hoyt, Ltd.* v. *United States,* 300 U. S. 297, 302.   See Cooley, Constitutional Limitations (2d ed.) 357–358.   In the circumstances of the instant case, we conclude that the owner of the defendants' land in 1945 acquired no substantial property right to maintain a gravel removal operation.

We hold that, in the absence of substantial equity, the use of land in violation of a zoning by-law or ordinance does not create a substantive right on the basis of a nonconforming use if the zoning by-law or ordinance is subsequently adjudicated to be invalid because of a defect in the process of adoption.   Nor does subsequent legislation which cures retroactively such a defect in the adoption of a zoning by-law or ordinance make a use of the land which was in violation of the zoning by-law or

ordinance, prior to validation, a protected nonconforming use. It necessarily follows that, if the defendants' predecessor in title acquired no right requiring constitutional protection, neither did the defendants.

4. A decree is to be entered enjoining the defendants in accordance with the third prayer of the bill, with costs of appeal to the plaintiff.

*So ordered.*


CUTTER, J. (concurring) I concur in the result, but would place the decision on the ground that the original 1937 by-law was validly adopted. In 1937, the town itself, instead of the selectmen, acted to set up the special group to make a purely advisory report, later acted upon by the town meeting. Nothing suggests that the provision in c. 40, § 27, as appearing in St. 1933, c. 269, § 1, authorizing the appointment by the selectmen of a special zoning board, was included in the statute otherwise than as a convenient procedural method of avoiding the necessity of a town meeting for such an appointment. The deviation from the statutory method seems to me at most a "trivial procedural defect" which is of no substantial significance in the light of the apparent legislative objectives. See *Hallenborg* v. *Town Clerk of Billerica*, 360 Mass. 513, 517–518, and authorities there cited. There was no failure of the special committee to make recommendations. Cf. *Whittemore* v. *Town Clerk of Falmouth*, 299 Mass. 64, 68–69.