BELLINGHAM MASSACHUSETTS SELF STORAGE, LLC vs. TOWN OF BELLINGHAM, MISC 20-000115

































 
 BELLINGHAM MASSACHUSETTS SELF STORAGE, LLC, Plaintiff, J. DAY ENTERPRISES, LLC, PAUL D. DOHERTY, as Trustee of D&D REALTY TRUST, Plaintiff-Intervenors, v. TOWN OF BELLINGHAM and ARTURO G. PATURZO, Defendants, and SHIRLEY A. FRENCH, as Trustee of GRAY WALL REALTY TRUST, MAPLE TREE PROPERTIES, LLC, and BERNON LAND TRUST, LLC, Parties-in-Interest
 MISC 20-000115 
 JULY 15, 2021
NORFOLK, ss.
ROBERTS, J.
MEMORANDUM OF DECISION AND ORDER ALLOWING IN PART AND DENYING IN PART PLAINTIFFS' AND PLAINTIFF-INTERVENORS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT














 Introduction 





 Plaintiff Bellingham Massachusetts Self Storage, LLC ("Self Storage") commenced this action on March 4, 2020 with the filing of a complaint ("the Complaint") against the Town of Bellingham ("the Town") and Arturo G. Paturzo ("Mr. Paturzo") challenging the validity of the adoption of an amendment to the Town's Zoning Bylaws ("ZBL") and Zoning Map that changed the zone in which Self Storage's property was located from the Industrial District to the Suburban District ("the 2019 Amendment"). Self Storage named as interested parties other landowners whose properties were affected by the rezoning. On August 11, 2020, interested parties Paul D. Doherty, as Trustee of D&D Realty Trust ("D&D Realty"), and J. Day Enterprises, LLC ("J. Day") filed motions to intervene in this action, which motions were allowed by the court on September 1, 2020, there being no opposition thereto. They are referred to collectively herein with Self Storage as "the Plaintiffs." Discovery closed in January 2021. 





 On March 26, 2021, Plaintiff's And Plaintiff-Intervenors' Joint Motion For Summary Judgment ("the Motion") and supporting pleadings were filed. The Town Of Bellingham's Opposition To Plaintiff's And Plaintiffs'/Intervenors Joint Motion For Summary Judgment and Cross Motion For Summary Judgment ("the Cross-Motion") was filed, together with supporting pleadings, on April 26, 2021. After further filings by the Plaintiffs and the Town, a hearing on the Motion and Cross-Motion was held on May 26, 2021. The Plaintiffs argue that the 2019 Amendment is invalid (1) because it was not properly initiated pursuant to G. L. c. 40A, § 5, or the Town's local rules, and (2) because it was not properly noticed pursuant to G. L. c. 40A, § 5, or the Town's local rules. The Town argues that the 2019 Amendment was lawfully initiated and that all required notice regarding its adoption was given. For the reasons set forth below, the Motion and the Cross-Motion are ALLOWED IN PART and DENIED IN PART. The 2019 Amendment is invalid because it was improperly initiated under G. L. c. 40A, § 5, first par., but not because of inadequate notice under the statute or the Town's local rules. 





Background 





 The following facts established in the record and pertinent to the Motion, Cross-Motion and oppositions thereto are undisputed or are deemed admitted.





The Parties 





 1. The Town is a municipal body corporate organized and existing under the laws of the Commonwealth of Massachusetts. Defendant Town Of Bellingham's Response To Plaintiff's And Plaintiffs'/Intervenors' Statement Of Material Facts In Support Of Summary Judgment And Statement Of Additional Material Facts ("SOMF") ¶ 1. 





 2. Self Storage owns property located at 306 Maple Street, Bellingham, Massachusetts ("the Self Storage Property"). SOMF ¶ 3. 





 3. J. Day owns property located at 240 Maple Street, Bellingham, Massachusetts ("the J. Day Property"). SOMF ¶ 4. 





 4. D&D Realty is the owner of property located at 236 Maple Street, Bellingham, Massachusetts ("the D&D Property"). SOMF ¶ 5. 





 5. Mr. Paturzo is the owner of property located at 10 Stonehedge Road, Bellingham, Massachusetts. SOMF ¶ 6. 





The 2019 Rezoning Amendment 





 6. In or around 2019, a petition was prepared to rezone certain parcels from the Town's Industrial District to the Suburban District and to amend the Zoning Map to reflect that change. SOMF ¶ 8. 





 7. The Town of Bellingham Planning Board Procedural Rules ("Procedural Rules"), Plaintiff's Appendix ("App.") Ex. 8, provide, in pertinent part, 





 2.0 SECTION TWO: ZONING AMENDMENTS 





 2.1 Initiation. M.G.L. ch. 40A § 5 provide[] that zoning amendments may be initiated by submittal of proposals to the Selectmen by any of the following: 





 - the Selectmen themselves 





 - the Board of Appeals 





 - the Planning Board 





 - M.A.P.C. [Note 1] 





 - an owner of land affected by the change 





 - registered voters in a number sufficient to place an article on the warrant, acting under, M.G.L. ch. 39 § 10. 





 The Planning Board will submit amendment proposals to the Selectmen either on behalf of others or on their own initiation, in either case by vote of a majority of those voting. 





 2.2 Hearing. 





 2.1 The Planning Board will hold a public hearing on all proposed zoning amendments, as provided in M.G.L. ch. 40A § 5. 





 2.2 Requests for zoning map amendments shall be accompanied by eight prints of a plan to scale, clearly showing the proposed change referenced for location on the Town zoning map, and Town Assessor's maps, and showing relevant district and property bounds, structures and natural features. It is advisable that a Registered Land Surveyor prepare the plan and description. A verbal description of the proposed change, suitable for legal advertisement, plus a filing fee of $75.00 shall also accompany the request. If the zoning map is to be amended, the proposed article should reference amendment of the town's Zoning Map. All of these materials must be submitted to the Planning Board not less than five weeks prior to the proposed public hearing date. 





 2.3 Notice of Hearing. Petitioners for re-zoning of land are responsible for providing notification by mail to the owner of land for which the rezoning is sought (if not the petitioner), abutters, owners of land directly opposite on any public or private street or way, abutters to the abutters within 300 feet of the property line of the property, even if over a town line. An "abutters list" shall be certified by the Tax Assessors listing all "abutters" and their addresses as appearing on the most recent tax list. Proof of mailing shall be documented for the Planning Board through the use of the US Postal Service's "Certificate of Mailing." Said receipts shall be given to the Board prior to opening the public hearing on the rezoning petition. 





 8. On or about January 8, 2019, Mr. Paturzo prepared and delivered to the Town (although he was unsure as to which department he delivered the document) a document entitled Zoning Bylaw Amendment - Maple Street, which states: 





 To see if the Town will vote to amend its Zoning Bylaw and Zoning Map in accordance with Attachment 1 and as follows: 





 Amending the zoning district at the following addresses from the Industrial District to the Suburban District:





 240 Maple Street Parcel 37 Lot 4, Parcel 37 Lot 5, 244 Maple Street Parcel 37 Lot 4-3, Parcel 37 Lot 4-4, 260 Maple Street Parcel 37 Lot 4-1, 306 Maple Street Parcel 37 Lot 6A, Parcel 37 Lot 6B, Parcel 37 Lot 4-3C, Parcel 47 Lot 3 or act or do anything in relation thereto. 





 By: Petitioner Art Paturzo 





 508-966-[****] 





 January 8, 2019 





 App. Ex. 11; App. Ex. 1 at 86, 88-89, 136; SOMF ¶ 38. 





 9. None of the parcels identified in the 2019 Amendment were owned by Mr. Paturzo. App. Ex. 2 at 169. 





 10. The genesis of Mr. Paturzo's proposed 2019 Amendment appears to be a similar effort initiated by the Town's planning board in 2018 to rezone from industrial to suburban other land abutting Maple Street in the Town. See App. Ex. 32 at 5. 





 11. The minutes of the public hearing before the planning board regarding the 2018 rezoning proposal reflect that Mr. Paturzo appeared, spoke in favor of the rezoning, and requested that the rezoning be expanded to include the eastern side of Maple Street, but was informed that the planning board could not add properties to a proposed amendment that had already been submitted to the planning board for public hearing. See App. Ex. 32 at 5. 





 12. With regard to Mr. Paturzo's proposed 2019 Amendment, Jean Keyes ("Ms. Keyes"), the Coordinator for the Bellingham Planning Department, sent an email to Mr. Paturzo on March 14, 2019 informing him that the first public hearing "for the Zoning Map change that you have proposed" would be held on April 25, 2019, and describing the steps that must be taken in advance of the public hearing as set forth in the Procedural Rules, including sending notice of the public hearing to abutters and obtaining a Certificate of Mailing form from the Post Office and filing it with the Planning Department no later than April 4, 2019. App. Ex. 9; SOMF ¶ 39. 





 13. In closing, Ms. Keyes requested that Mr. Paturzo "affirm that you would like to proceed with the public hearing process and that you will provide the necessary documentation and pay the associated costs. Once we receive your affirmation, we will proceed and will expect to receive the information and documentation requested above as soon as possible." App. Ex. 9; SOMF ¶ 39. 





 14. On March 25, 2019, Mr. James Kupfer ("Mr. Kupfer"), the Town Planner, Zoning Compliance Officer and Assistant Building Commissioner for the Town, App. Ex. 2 at 15, sent an email to Mr. Paturzo attaching a copy of a map showing the lots to be moved from the Industrial District to the Suburban District. App. Exs. 13, 39; SOMF ¶ 45.





 15. According to Mr. Paturzo, this was when he first came into possession of the zoning map, App. Ex. 1 at 132-133, which Mr. Kupfer prepared based on Mr. Paturzo's communication to him that the rezoning was to affect land south of Interstate 495 on the east side of Maple Street. App. Ex. 1 at 137-138. 





 16. The zoning map prepared by Mr. Kupfer was in his possession by at least March 25, 2019 and was filed with the Town Clerk on April 4, 2019, SOMF ¶ 46; App. Ex. 39, after the Town's Warrant for the May 22, 2019 annual town meeting ("the Warrant") was prepared and mailed out by the Town on or about March 18, 2019. SOMF ¶ 47. 





 17. This did not comply with the Procedural Rules, which required that eight prints of a plan to scale be submitted to the planning board, not be submitted to the proponent by the planning board, "not less than five weeks prior to the proposed public hearing date." See App. Ex. 8. 





 18. Also on March 25, 2019, on Bellingham Planning Board letterhead, Mr. Paturzo, as the "Proponent for the above-referenced Zoning Bylaws and Zoning Map amendment for the May 22, 2019 Annual Town Meeting," signed a statement agreeing to comply with certain of the requirements set forth in the Procedural Rules and to pay for the same ("All costs incurred will be paid by the proponent."). App. Ex. 12; App. Ex. 1 at 139. 





 19. Among other things, Mr. Paturzo agreed to pay the costs of publication of notices in the local newspaper, to mail the public hearing notice and zoning map showing the proposed change area to, among others, the property owners of the affected parcels by no later than April 11, 2019 and to file, as proof of the mailing, a Certificate of Mailing form for each mailing by no later than April 18, 2019. App. Ex. 12; App. Ex. 1 at 139. 





 20. Mr. Kupfer testified that Mr. Paturzo paid for the cost of the newspaper notices because "[h]e was the one that brought it forward," App. Ex. 2 at 79, and that all of the mailings and all of the fees related to advertising for the planning board's April 25, 2019 public hearing were handled by Mr. Paturzo and not by the Town. App Ex. 2 at 86. 





 21. While Mr. Paturzo testified to mailing "[w]hatever was required" to those entitled to notice at his deposition, App. Ex. 1 at 144, he did not recall what it was that he mailed to them, App. Ex. 1 at 145, 147; whether he sent them the public hearing notice, App. Ex. 1 at 145, 147; whether he had even seen the public hearing notice before, App. Ex. 1 at 145; or whether he sent the zoning map prepared by Mr. Kupfer. App Ex. 1 at 156. 





 22. Mr. Paturzo further testified that, while he was aware that the Post Office charged $1.45 for a Certificate of Mailing, App. Ex. 1 at 162, as reflected on the Certificates of Mailing obtained by Mr. Paturzo and filed with the Town, App. Ex. 16, App. Ex. 1 at 157, 166, he was not aware of whether any additional fee was charged to cover the cost of mailing the envelopes, App. Ex. 1 at 162-163; [Note 2] and did not recall how he paid for the postage on the envelopes, App. Ex. 1 at 163. [Note 3] 





 23. With respect to the newspaper notices published by Mr. Paturzo, both state that "[a] draft of the proposed amendments to the Bylaws may be viewed at the Planning and Zoning Office or Town Clerks' office in the Municipal Center, 10 Mechanic Street in Bellingham, MA during regular Municipal Center business hours." App. Ex. 19. 





 24. The minutes of the April 25, 2019 planning board meeting indicate that a public hearing was opened to address the 2019 Amendment, that "Art Paturzo, Proponent" was present, that Mr. Paturzo and the Town Planner, Mr. Kupfer, explained that the 2019 Amendment was similar to the 2018 rezoning, that one neighbor asked a question, that the public hearing was then closed and, without discussion, the planning board unanimously voted to recommend the change of zoning from Industrial to Suburban at the May 22, 2019 annual town meeting. App. Ex. 10. 





 25. There was no opposition to the 2019 Amendment at the April 25, 2019 public hearing before the planning board, App. Ex. 1 at 180, and no property owner of any of the properties that would be affected by the 2019 Amendment spoke at that hearing. App. Ex. 2 at 92. 





 26. Neither Self Storage, D&D Realty, J. Day, nor interested party Shirley A. French, all owners of properties affected by the rezoning, received notice of the planning board's April 25, 2019 public hearing in advance thereof. App. Exs. 34-38. 





 27. Mr. Paturzo also testified before the Town's finance committee regarding the 2019 Amendment, and the finance committee recommended the 2019 Amendment. App. Ex. 1 at 181. 





 28. At his deposition, Mr. Paturzo testified that he "went to a number of boards. I can't recall which boards I went to." App. Ex. 1 at 107. He did not recall whether he made a presentation to the Town's board of selectmen regarding the 2019 Amendment. App. Ex. 1 at 107. 





 29. At some point prior to the annual town meeting (Mr. Paturzo did not recall when), Mr. Paturzo personally obtained signatures on a form in support of the 2019 Amendment, which he subsequently filed with the Town. App. Ex. 1 at 93, 95, 103; App. Ex. 21. 





 30. The form does not state the subject on which action is requested by the annual town meeting, and there is no evidence that that board of selectmen requested that the board of registrars of voters or the board of election commissioners check and certify the signatures, or that the signatures on the form were checked and certified prior to the 2019 Amendment being added to the Warrant. SOMF ¶ 42; App. Ex. 3 at 16-21. [Note 4] 





 31. Article 17 of the Warrant, entitled "Zoning Bylaw And Zoning Map Amendment - Maple Street," states: 





 To see if the Town will vote to amend its Zoning Bylaw and Zoning Map in accordance with Attachment 1 and as follows: 





 Amending the zoning district at the following addresses from the Industrial District to the Suburban District: 





 240 Maple Street Parcel 37 Lot 4, Parcel 37 Lot 5, 244 Maple Street Parcel 37 Lot 4-3, Parcel 37 Lot 4-4, 260 Maple Street Parcel 37 Lot 4-1, 306 Maple Street Parcel 37 Lot 6A, Parcel 37 Lot 6B, Parcel 37 Lot 4-3C, Parcel 47 Lot 3; or act or do anything in relation thereto. 





 (By: Petitioner Art Paturzo) 





 App. Ex. 17. 





 32. Every other article of the Warrant also identifies its proponent, either "By: Board of Selectmen;" "By: DPW Director;" "By: Library Trustees, D.P.W., Board of Health, Commission on Disability, Police Department, Conservation Commission, Board of Selectmen, School Committee;" "By: Petitioner Raymond Dirany, Manager Dirany Real Estate, LLC;" "By: Petitioner Bruce W. Lord for Bellingham Sunoco;" "By: Board of Health;" "By: Chief Financial Officer;" "By: Petitioner Country Home Builders, Inc. Brad Wright, President;" or "By: DPW Director/Chief Financial Officer." App Ex. 17. 





 33. According to Mr. Paturzo, he was identified as the petitioner in the Warrant because "I am the one who petitioned for the amendment," App. Ex. 1 at 184, and he further stated that it was "just me" who initiated the petition and the initial filing with the Board of Selectmen. App. Ex. 1 at 198. 





 34. According to Mr. Kupfer, "Art Paturzo proposed [the 2019 Amendment] to the Planning Board. The Planning Board reviewed, recommended. I believe the Board of Selectmen also did. I believe the Finance Committee also did. Then it ultimately went to town meeting where it was unanimously voted by the towns' [sic] people." App. Ex. 2 at 36. 





 35. Because Mr. Paturzo was unable to be present at the May 2019 annual town meeting, he asked someone else to present the 2019 Amendment at the meeting. App. Ex. 3 at 68. 





 36. Over the objection of, among others, Self Storage, the Commonwealth of Massachusetts Office of the Attorney General approved the adoption of Warrant Article 17 by letters dated December 6, 2019 and January 7, 2020. App. Exs. 40, 41. 





 37. With respect, in particular, to the objectors' argument that Mr. Paturzo was not authorized to initiate the 2019 Amendment, the Office of the Attorney General stated in each letter that, "based on our standard of review, we cannot conclude that there exists a procedural deficiency that requires our disapproval of Article 17. However, our rejection (based on a limited factual record) of this argument does not foreclose a later court challenge to Article 17 based on a more fully developed record." App Exs. 40, 41. 





Analysis 





The Summary Judgment Standard 





 In assessing the Motion, the court must determine whether the "pleadings, depositions, answers to interrogatories, and responses to requests for admission ... together with the affidavits ... show that there is no genuine issue as to any material fact and that the [Plaintiffs are] entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c). "The moving party bears the burden of proving that there are no material issues of fact and that he is entitled to judgment as a matter of law." Highlands Ins. Co. v. Aerovox Inc., 424 Mass. 226 , 232 (1997). In viewing the factual record presented as part of the motion, the court draws "all logically permissible inferences" from the facts in favor of the non-moving party. Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202 , 203 (1991). "Summary judgment is appropriate when, 'viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.'" Regis College v. Town of Weston, 462 Mass. 280 , 284 (2012), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117 , 120 (1991). 





Compliance with G. L. c. 40A, § 5 





 The Plaintiffs first contend that the 2019 Amendment is invalid because it was not initiated in the manner required by G. L. c. 40A, § 5. G. L. c. 40A, § 5, as then in effect, [Note 5] provided in pertinent part: 





 Zoning ordinances or by-laws may be adopted and from time to time changed by amendment, addition or repeal, ,em>but only in the manner hereinafter provided. Adoption or change of zoning ordinances or by-laws may be initiated by the submission to the ... board of selectmen of a proposed zoning ordinance or by-law by a ... board of selectmen, a board of appeals, by an individual owning land to be affected by change or adoption, by request of registered voters of a town pursuant to section ten of chapter thirty-nine, ... by a planning board, by a regional planning agency or by other methods provided by municipal charter. The board of selectmen or city council shall within fourteen days of receipt of such zoning ordinance or by-law submit it to the planning board for review. 





 No zoning ordinance or by-law or amendment thereto shall be adopted until after the planning board in a ... town, ... has ... held a public hearing thereon, ... at which interested persons shall be given an opportunity to be heard. Said public hearing shall be held within sixty-five days after the proposed zoning ordinance or by-law is submitted to the planning board by the ... selectmen .... Notice of the time and place of such public hearing, of the subject matter, sufficient for identification, and of the place where texts and maps thereof may be inspected shall be published in a newspaper of general circulation in the city or town once in each of two successive weeks, the first publication to be not less than fourteen days before the day of said hearing, and by posting such notice in a conspicuous place in the city or town hall for a period of not less than fourteen days before the day of said hearing. Notice of said hearing shall also be sent by mail, postage prepaid to the department of housing and community development, the regional planning agency, if any, and to the planning board of each abutting city and town. The department of housing and community development, the regional planning agency, the planning boards of all abutting cities and towns and nonresident property owners who may not have received notice by mail as specified in this section may grant a waiver of notice or submit an affidavit of actual notice to the city or town clerk prior to town meeting ... action on a proposed zoning ordinance, by-law or change thereto. ... 





(emphasis added). 





 In determining whether a zoning amendment has been properly adopted pursuant to § 5, two conflicting standards are applicable. First is "the rule of law that there is a presumption in favor of the validity of a municipal ordinance or by-law." Town of Canton v. Bruno, 361 Mass. 598 , 608 (1972). Second is the proposition that "the Legislature mandated a rule of strict compliance by the plain language, '[Zoning] ordinances or by-laws may be adopted ... but only in the manner ... provided.'" Id. at 603. Accord Rayco Inv. Corp. v. Board of Selectmen, 368 Mass. 385 , 394 (1975), quoting Leahy v. Inspector of Bldgs. of New Bedford, 308 Mass. 128 , 133 (1941) ("zoning by-laws may 'be changed by amendment, addition or repeal, but only in the manner hereinafter provided,' that is, by following the technical procedures outlined therein. If the statutory requirements are not met, existing zoning regulations remain unaffected by the purported amendment."). See also Penn v. Town of Barnstable, 26 LCR 215 , 216 (2018) (Vhay, J.), citing Town of Canton and Cherkes v. Town of Westport, 393 Mass. 9 , 11 (1984) ("While municipalities enjoy broad power to adopt or amend zoning ordinances, see Sturges v. Town of Chilmark, 380 Mass. 246 , 253, 402 N.E.2d 1346 (1980), the Legislature insists that municipalities comply strictly with § 5 when they do so."). 





 The analysis set forth in Hallenborg v. Town Clerk of Billerica, 360 Mass. 513 (1971) is instructive here. In that case, notice of a hearing on a proposed amendment permitting apartment houses in the town was published only thirteen, rather than the required fourteen, days in advance of the hearing. The amendment was adopted and thereafter building permits for seventeen buildings were issued, with expenditures of $500,000 incurred in support thereof, and another $1,000,000 loan commitment was obtained. Some seven months after the amendment was adopted, residents and taxpayers of the town filed a petition for a writ of mandamus to order the town clerk to strike the amendment from the zoning bylaw on the grounds that the notice provisions of the predecessor to § 5 had not been followed. 





 The Hallenborg court noted that, "[o]rdinarily in the enactment and amendment of ordinances and by-laws, fairly strict compliance by local legislative bodies with prescribed statutory procedures is treated as mandatory." 360 Mass. at 517. "The principle is not inflexible, however, and a court, in appraising the legal effect of insubstantial noncompliance with procedural details, must consider whether strict compliance is mandatory or only directory, and whether an asserted minor noncompliance in fact is significantly inconsistent with, or prejudicial to, the apparent legislative objectives of the prescribed procedures." Id. (internal citations omitted). 





 In the case before it, the Hallenborg court first noted that there did not appear to be any intentional failure to comply with the statute and that no petitioner suffered any substantial prejudice as a result of the one day reduction in the length of notice. According to the court: 





 Considerations of fairness, and some of the reasoning of the decisions just cited, suggest that amendments of zoning by-laws or ordinances ought not to be set aside lightly as invalid because of trivial procedural defects in their adoption, (a) at the behest of persons who have not shown themselves to be prejudiced significantly by the procedural deficiencies, and (b) at a very great or disproportionate cost to other persons who have relied in good faith upon the by-law as adopted and published. 





Id. at 518. Based on those considerations, the court concluded that the equities required treating the amendment as valid, at least as applied to those permit holders who had changed position based on the enactment of the amendment. Noting that "[t]here are limits, however, upon the extent to which there is discretion completely to deny relief by mandamus, where the petitioner attempts to assert a public right," id. at 519, the court delayed relief by mandamus "long enough to permit either adoption of the by-law amendment with full compliance with c. 40A, § 6 [predecessor to § 5], or an amendment to protect persons who in good faith have relied on the amendment as properly adopted." Id. at 520. 





 In analyzing particular circumstances brought before it, the Supreme Judicial Court has held that a zoning bylaw adopted by town meeting after being proposed by a special board was invalid, as the special board was created in a manner contrary to that provided for by the Zoning Enabling Act. Town of Canton, 361 Mass. at 602-603 ("While it was permissible to utilize a special board, the town meeting had no authority to designate a method of selection contrary to the method prescribed by the Legislature. Under the Zoning Enabling Act, it lay only in the selectmen to appoint the membership of the special board."). In Whittemore v. Town Clerk of Falmouth, 299 Mass. 64 (1937), under a prior version of the statute requiring that the planning board "submit[] a final report with recommendations" to town meeting with respect to zoning amendments, the Supreme Judicial Court stated that "[b]y plain words a condition precedent is thus established to the making of such changes. The town meeting has no jurisdiction to take up the consideration of the merits of such change unless and until there is before it a report by the planning board 'with recommendations.'" Id. at 68. "The conclusion is that the amendment to the zoning by-law was invalid because the planning board did not make a report 'with recommendations' as required by the governing statute." Id. at 69. 





 In contrast, this court, relying on Supreme Judicial Court precedent, has held that § 5 does not prohibit modifications to proposed zoning amendments subsequent to notice being sent in accordance with the statute: "Under G. L. c. 40A, § 5, only defects in the form of notice required in the zoning amendment process that are misleading are grounds for invalidation." McLean Hosp. Corp. v. Town of Belmont, 8 LCR 155 , 162 (2000) (Green, J.), citing Doliner v. Town Clerk of Millis, 343 Mass. 10 , 12-13 (1961) (amendment valid despite planning board's presentation of 13 changes to town meeting without public hearing because changes affected only 4.3% of the land at issue); Burlington v. Dunn, 318 Mass. 216 , 218-219 (1949) (amendment valid despite adoption of map different from original inserted in warrant for town meeting because purpose of warrant is to provide general scope of meeting). In addition, failure to comply with the notice requirements of § 5 will be excused where those who were not given the statutorily required notice had actual notice of the proposed amendment. Pitman v. City of Medford, 312 Mass. 618 , 623 (1942) (where owners of four affected parcels not given proper notice filed written objections and attended the hearing on the proposed amendment, "[t]he judge of the Land Court was warranted in finding that they waived all objections as to notice."). 





 The parties and the court have only identified one decision addressing the validity of an amendment based on by whom it was initiated, Davolio v. Town of Shrewsbury, Land Court Case No. 171842 (Kilborn, J.) (May 27, 1992), 1992 WL 12151913. There, the court found that the private petitioners were qualified to initiate the zoning amendments at issue as "individual[s] owning land to be affected by change or adoption." Davolio, 1992 WL 12151913 at *10. In dicta, the court further stated that, "[i]n any event, on the facts here, I conclude strict compliance with Section 5 in this particular is not mandatory." Id. Since Davolio did not address the fact pattern presented in this case, it is not considered further. 





 Here, as noted above, the first sentence of § 5 states the basic proposition that zoning ordinances may be "changed by amendment, addition or repeal, but only in the manner hereinafter provided." In the very next sentence, § 5 expressly sets forth who may initiate a zoning change and how: 





 by the submission to the city council or board of selectmen ... by [1] a city council, [2] a board of selectmen, [3] a board of appeals, [4] by an individual owning land to be affected by change or adoption, [5] by request of registered voters of a town pursuant to section ten of chapter thirty-nine, [6] by ten registered voters in a city, [7] by a planning board, [8] by a regional planning agency or [9] by other methods provided by municipal charter. [Note 6] 





It cannot be credibly maintained, on the undisputed facts set forth above, that anyone other than Mr. Paturzo, who does not fall into any of the nine categories in § 5, first par., initiated the 2019 Amendment. He prepared and delivered the 2019 Amendment, in which he identified himself as the "Petitioner," to some Town office in January 2019. On March 14, 2019, the Town planning board's coordinator communicated with Mr. Paturzo regarding the steps necessary to move the 2019 Amendment forward and requested that Mr. Paturzo "affirm that [he] would like to proceed with the public hearing process and that [he] will provide the necessary documentation and pay the associated costs." On March 25, 2019, Mr. Paturzo, as the "Proponent" of the 2019 Amendment, signed a statement agreeing to comply with requirements set forth in the Procedural Rules and to pay for the same ("All costs incurred will be paid by the proponent."). Mr. Paturzo did pay those costs. According to Mr. Kupfer, because "[Mr. Paturzo] was the one that brought it forward," Mr. Paturzo, and not the Town, took responsibility for all of the mailings and all of the fees related to advertising for the planning board's public hearing. Mr. Paturzo made presentations to the planning board and to the Town's finance committee. The 2019 Amendment as drafted by Mr. Paturzo in January 2019 was later included in the Warrant verbatim, and Mr. Paturzo was described therein as the "Petitioner." Mr. Paturzo, not any Town official, arranged for someone else to make the presentation regarding the 2019 Amendment at the annual town meeting in Mr. Paturzo's absence. 





 Nevertheless, the Town argues that, because the planning board and the board of selectmen, either of whom are authorized to initiate zoning amendments, advanced the 2019 Amendment, the planning board by voting to recommend it and the board of selectmen by including it in the Warrant, the requirements of § 5 were met. That interpretation of the statute ignores the language of the first two sentences of § 5, where the Legislature clearly set forth the procedure for initiating zoning amendments. The Legislature did not permit a single registered voter of a town to do so, as was the case here, instead requiring either ten or one hundred registered voters to add subjects to the warrant, depending on whether an annual town meeting or a special town meeting was to be held. 





 This case presents at least one likely rationale for § 5's requirements regarding the initiation of zoning amendments. Mr. Paturzo, unlike those municipal entities or individuals identified in § 5, had little interest in assuring that the requirements of § 5 were met. After all, it was not his property that was to be rezoned. As a result, those requirements appear to have been honored in the breach: it is not clear when the 2019 Amendment was submitted to the board of selectmen (Mr. Paturzo did not recall with whom he filed the 2019 Amendment initially; although it does appear in the board of selectmen's file on this matter, D. App. Ex. 45, there is no evidence as to when it was filed and no evidence that Mr. Paturzo appeared before the board of selectmen to present the 2019 Amendment, App. Ex. 1 at 107); the zoning map reflecting the 2019 Amendment was not timely prepared; the newspaper publication failed to identify "the place where ... maps thereof may be inspected," App. Ex. 19; there is a significant question as to whether Mr. Paturzo mailed the required notices to, among others, the owners of land for whom the rezoning was sought; and there is no evidence as to what was mailed, assuming that the proper postage was paid by Mr. Paturzo, since Mr. Paturzo did not keep copies of whatever it was that he mailed. App. Ex. 1 at 147-148. 





 This court concludes that, on the undisputed facts and as a matter of law, strict compliance with G. L. c. 40A, § 5, first par., is required, that strict compliance did not occur here, and that the failure to comply was "significantly inconsistent with, or prejudicial to, the apparent legislative objectives of the prescribed procedures." Hallenborg, 360 Mass. at 517. 





Notice Pursuant to G. L. c. 40A, § 5, And The Procedural Rules 





 The Plaintiffs also contend that the 2019 Amendment should be invalidated because of the failure to comply with the notice requirements of § 5 and the Procedural Rules. In particular, they focus on (1) the failure of a number of owners of affected property, including themselves, to receive notice of the public hearing, and (2) Mr. Paturzo's inability to recall the details of his mailing of notices to abutters. Section 5, quoted in full above, does not require notice to the owners of affected property or to abutters, only requiring that notice be published twice in a newspaper of general circulation, be posted in a conspicuous place in town hall, and be mailed to the department of housing and community development, the regional planning agency and to the planning board of each abutting city and town. The Procedural Rules, also quoted in full above, do require more: notice by mail to the owner of the land for which rezoning is sought, if not the petitioner; abutters; owners of land directly opposite on any public or private street or way; and abutters of abutters within 300 feet of the property line of the property, even if over a town line. 





 There are two principal problems with the Plaintiffs' argument on summary judgment on this issue. First, the court must draw all inferences in favor of the non-moving party. Here, that means that Mr. Paturzo's testimony, as weak as it is, is disputed by the moving parties, who ask that the court draw the inference that the required notice was not sent (leaving aside whether it was received, as it plainly was not in some cases) to the owners of affected properties or to abutters. That cannot be done on summary judgment. Second, even were the undisputed facts as the Plaintiffs contend them to be, the Plaintiffs would not be entitled to judgment as a matter of law. While the Plaintiffs would have standing to assert claims arising out of the failure to provide notice to them, it is not at all clear that they have standing to assert claims arising out of the failure to provide notice to others. See Kenner v. Zoning Bd. of Appeals, 459 Mass. 115 , 120 (2011) ("A person aggrieved under G. L. c. 40A must assert 'a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest.' Harvard Sq. Defense Fund, Inc. v. Planning Bd. of Cambridge, 27 Mass. App. Ct. 491 , 493, 540 N.E.2d 182 (1989). See Standerwick v. Zoning Bd. of Appeals of Andover, supra at 27."). And, even were that not the case, Durand v. Superintendent of Public Bldgs., 354 Mass. 74 (1968), cited by the Town, stands for the proposition that failure to follow local ordinances governing the adoption of zoning amendments is not fatal: "It suffices that a hearing consonant with the requirements of G. L. c. 40A was held by the planning board prior to its recommendation to the council. Those parties having an interest in the zoning change thus had an opportunity to appear and state their views." Durand, 354 Mass. at 76. 





 It also bears noting that § 5 expressly provides for notice to nonresident property owners, presumably because the Legislature deemed notice to resident property owners as provided by the statute to be adequate: 





 Zoning ordinances or by-laws may provide that a separate, conspicuous statement shall be included with property tax bills sent to nonresident property owners, stating that notice of such hearings under this chapter shall be sent by mail, postage prepaid, to any such owner who files an annual request for such notice with the city or town clerk no later than January first, and pays a reasonable fee established by such ordinance or by-law. In cases involving boundary, density or use changes within a district, notice shall be sent to any such nonresident property owner who has filed such a request with the city or town clerk and whose property lies in the district where the change is sought. 





No argument is made here that any of the affected owners were entitled to or did take advantage of this provision of the statute. 





 Drawing all factual inferences in favor of the non-moving parties, the Plaintiffs, the Town is entitled to a judgment as a matter of law because the Plaintiffs received all the notice to which they were entitled under § 5. 





Conclusion 





 For the foregoing reasons, the Motion and Cross-Motion are ALLOWED IN PART and DENIED IN PART. Judgment shall enter on Count I of the Complaint declaring that the 2019 Amendment is invalid because improperly initiated pursuant to G. L. c. 40A, § 5, but not invalid because of any failure of notice pursuant to the statute or the Town's Procedural Rules. 





 SO ORDERED 





FOOTNOTES
[Note 1] Based on other material in the record, it appears that M.A.P.C. refers to the Metropolitan Area Planning Council. See SOMF ¶ 25. 

[Note 2] Plaintiff's Appendix contains, at Ex. 20, an unauthenticated document purportedly from the USPS website, answering frequently asked questions regarding certificates of mailing, including that fees for certificates of mailing are "in addition to regular postage" and that a certificate of mailing "only shows the date your mail was accepted. It does not provide record of delivery, proof of mailing, or insure items against loss." Because Ex. 20 is not authenticated, its content is not admissible and it is disregarded. Commonwealth v. Meola, 95 Mass. App. Ct. 303 , 307 (2019) ("'Authentication represents a special aspect of relevancy in that evidence cannot have a tendency to make the existence of a disputed fact more or less likely if the evidence is not that which its proponent claims' (citations and quotation omitted). United States v. Branch, 970 F.2d 1368, 1370 (4th Cir. 1992). For this reason, authentication of digital evidence such as an e-mail, an electronic message using a social media platform, a 'screen shot' from a website, or a videotape recording 'is a condition precedent to its admissibility.' Commonwealth v. Foster F., 86 Mass. App. Ct. 734 , 737, 20 N.E.3d 967 (2014)"). 

[Note 3] During the course of his deposition, Mr. Paturzo repeatedly responded to questions by stating that he did not recall the answer, or words to that effect, resulting in testimony that is marginally useful at best. 

[Note 4] In support of the Town's Cross-Motion and in opposition to the Motion, the Town submitted the affidavit of town clerk Lawrence Sposato, Jr., sworn to on April 22, 2021, in which he states that, after Mr. Kupfer's December 2020 deposition (and nearly two years after the May 2020 annual town meeting), "the Town's Board of Registrars of Voters certified the thirteen (13) signatures" obtained by Mr. Paturzo "as being the names of qualified voters in the Town." Town Of Bellingahm's [sic] Summary Judgment Record Appendix ("D. App."), Ex. 50. It is not clear why the Town undertook this exercise. Without citation to any evidence in the record, the Town suggests that "[i]t appears that the Town, upon receiving the [2019 Petition] from Mr. Paturzo, was in favor of the Zoning Amendment and elected to advance the proposal on its own, as the Town did not then verify the signatures filed in support of the Zoning Amendment and elected not to treat the proposal as a citizens' petition." Town Of Bellingham's Memorandum In Opposition to Plaintiff's And Plaintiffs'/Intervenors' Joint Motion For Summary Judgment And In Support Of Its Cross Motion For Summary Judgment ("D. Opp.") at 8. 

[Note 5] The statute was amended by Acts of 2020, c. 358, § 19, effective January 14, 2021, which rewrote the fifth paragraph of § 5 in ways not relevant here. 

[Note 6] The court does not consider it necessary to look beyond this provision, as the "other methods provided by municipal charter" are identical. The Town's ZBL states that "[t]his bylaw may from time to time be changed by amendment, addition or repeal by the Town Meeting in the manner provided in M.G.L. ch. 40A, § 5, and any amendments therein [sic]." App. Ex. 23 at C:184. This more specific provision of the Town's bylaws relating to zoning amendments takes precedence over a more general provision regarding the initiation of warrant articles, found at Article 2, § 7. App. Ex. 23 at C:6. Plainville Asphalt Corp. v. Town of Plainville, 83 Mass. App. Ct. 710 , 713 (2013) ("The more specific statute or bylaw controls over the more general. See Grady v. Commissioner of Correction, ante 126, 131-132 (2013)."). 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.